(No. 36538)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN LEE IKERD, Plaintiff in Error.

*Opinion filed February 1, 1963.*

JOHN L. PARKER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant, John Lee Ikerd, was found guilty of the crime of armed robbery by a jury. He was convicted and sentenced by the criminal court of Cook County to a term of 20 years to life in the State Penitentiary. On this writ of error he contends that the conviction should be reversed on the grounds that the admission of his oral confession was in violation of the Criminal Code; that his guilt was not established beyond a reasonable doubt by the induced and uncertain identification; and that the weapon admitted in evidence was procured by an unlawful search and seizure.

From the record it appears that shortly before 8 P.M. on March 5, 1960, as Fred Lux, the complaining witness, went toward his automobile, two men walked past him, and he was struck on the head from behind. One man grabbed him from the front and the other from behind, and they dragged him into a small 5' x 5' vestibule in the

nearby building. The man in front held a gun on Lux, while the man in the rear removed his billfold, watch, and cigarette lighter. Lux at no time could see the man behind him, although, according to his testimony, he was able to get a good look at the man facing him, who was, in Lux's words, "standing right next to me." The man in front told the other one to leave, and that he would "watch him [Lux] so he can't follow us." The man in back left, and was followed thirty seconds later by the man with the gun. Lux then telephoned the police from a nearby house. He described the man who stood in front of him to the police as "tall, about 6 feet, slender, colored, and wearing a light colored coat and light tan or brown hat."

Lux and officers Lenz and McLaughlin drove around the area of 12th St. and Albany St. in the police car. They saw two men crossing the street, one of whom fitted the description given by Lux. When the police car was about 25 to 30 feet from the men, they began walking in the opposite direction, and then ran when the officers ordered them to halt. The officers gave chase, but only one of the men was apprehended. Since Lux could not identify him, the man was released. He was later identified as James Stuckey, a co-defendant in this case. The taller man, wearing the light tan coat and brown fedora, fled.

On March 8, 1960, in the course of the investigation of the Lux robbery, to which officers Parks, Preston and Cooper were assigned, they arrested three men in a pool room. After interrogating them, the police went to the home of defendant's mother, and then to a Roosevelt Road address, where they waited in an apartment through the night of March 8 for the defendant John Lee Ikerd. Although he did not appear, at about 2 A.M. they heard the witness Nelson open the door with a key. Nelson at first denied knowing defendant Ikerd, but after interrogation, involving some alleged brutality, Nelson gave the police an address on Whipple Street where defendant was staying.

Five policemen in plain clothes accompanied Nelson to that apartment. They waited in the doorway as Nelson knocked and identified himself. Defendant opened the door slightly and then tried to shut it when the officers shouted "Police!" and pushed the door open. A scuffle followed, during which defendant resisted arrest. In the course of that arrest, officer Parks found a loaded .45 automatic pistol on top of a metal cabinet in the apartment. That weapon was subsequently identified by Lux at the trial as having the "same size, shape and color" as the weapon used at the time of the robbery.

At about 8 P.M. that same day, March 9, a police line-up was held at the police station, with some seven men participating, including defendant Ikerd, his co-defendant Stuckey, and the witnesses Nelson and Hampton, and four others who were under arrest. Defendant Ikerd wore a tan coat and hat, which he later removed. During the course of the line-up, which lasted between 25 and 30 minutes, Lux identified and pointed out defendant Ikerd as the man who had robbed him.

The evidence is controverted as to whether this identification was before or after defendant was handed the gun taken from the apartment. Lux and police officer Lenz claim it was afterward, and defendant's witnesses Nelson and Hampton testified that it was before. The testimony is also conflicting between the police and defendant's witnesses as to whether defendant admitted that it was his gun when it was handed to him. In connection with Lux's identification of Ikerd, defendant Stuckey and the witnesses Nelson and Hampton all testified that Lux had visited the police lockup earlier in the day and was then unable to identify any of the men as the one who held him up. They claimed that he had said that the man who held him up was older. Hampton also claimed that Lux made a second unsuccessful attempt to identify the men at 4:30 that afternoon. Lux denied such visits to the

lockup, and the People offered in rebuttal Lux's employment time card showing that he was at work at the time of both alleged afternoon visits.

After the line-up, the police escorted the men out, and Lux signed a complaint. About a half hour or an hour later in the detective room, officers Cooper, Preston, Anderson and Lenz questioned defendants Stuckey and Ikerd, and the others arrested. Ikerd would not make a written statement, but gave an oral account of his part in the robbery, as did the others. According to the testimony of the witness Lenz, defendant Ikerd admitted that he had the .45 calibre revolver; that Stuckey was the second man; that after robbing Lux, Stuckey left and Ikerd remained to cover him. Ikerd also recalled the two officers approaching them on the corner of Albany Street and Roosevelt Road on March 5, and said that he refused to halt when ordered because he had the gun on him. After Ikerd told his part, Stuckey admitted his participation and explained that he had denied it on his previous arrest right after the robbery because the man (Lux) couldn't identify him.

Defendant's oral confession was attested to by detective Lenz and the other officers present, with the exception of Anderson, who was on furlough at the time of the trial. They claimed that when defendant Ikerd said, "Stuckey, we were together on that job," Stuckey agreed. At the trial, however, Stuckey denied robbing Lux.

In urging the reversal of the conviction, defendant contends that the admission of evidence relating to his oral confession violated section 1 of division XIII of the Criminal Code, (Ill. Rev. Stat. 1959, chap. 38, par. 729). The relevant portion of said section provides: "Whenever a written or oral confession shall have been made before any law enforcement officer or agency in this State by any person charged with any crime, a copy of such confession, if written, together with a list of the names and addresses of all persons present at the time such confession was made

shall be given to the defendant. * * * If such confession was not reduced to writing, then a list of the names and addresses of all persons present at the time the confession was made shall be furnished. * * * No confession shall be admitted as evidence in any case unless the confession and/or list of names and addresses of persons present at the time the confession was made is furninshed."

In the instant case, the names and addresses given to defendant included the police officers Cooper, Preston, Anderson and Lenz. It did not include the names of the co-defendant, Stuckey, or the suspects Nelson, Hampton and Slater, who were being interrogated there at the time. Defendant insists, therefore, that under a literal interpretation of the statute, defendant's oral confession is inadmissible.

It is axiomatic that a statute must be construed in its entirety and in the light of its objectives. This particular section of the Criminal Code applies to confessions "before any law enforcement officer"—not before co-defendants and friends—and endeavors to make certain that defendant knows in advance of trial the names of those law enforcement officers, or their agents or employees, before whom he confessed. The statutory purpose, as set forth in *People* v. *Pelkola,* 19 Ill.2d 156, relied upon by defendant, is to give the accused "protection against surprise, unfairness and inadequate preparation."

Neither that case, however, nor its construction of the statute, in any way support defendant's position. There it was held that since the accused was not given the name of the officer before whom he confessed, the officer could not testify to that oral confession, either in chief or in rebuttal. The court reasoned that without the officer's name, the accused was denied the protection against surprise, unfairness and inadequate preparation, which the statute was intended to provide.

Since defendant in the case at bar was given such a

list of all officers present, and there was no attempt, as in the *Pelkola* case, to introduce testimony of any officer not on the list, there was no conceivable element of surprise or unfairness; nor could there be any basis for inadequate preparation. Consequently, the decision in the *Pelkola* case can in no way be deemed authority for rejecting testimony of defendant's oral confession here. On the contrary, under the legitimate implication of that decision, the evidence here would in no way infringe the objective of this section of the Criminal Code. To permit defendant to now avoid his confession on the ground that the list submitted by the People did not include the bystanders— his friends—who were being interrogated, is to exalt technicalities at the expense of substance, an approach which brings only disrepute to the law. The admission of defendant's oral confession was, therefore, in our judgment, proper and in no way constituted reversible error. This conclusion is particularly compelling, since even in the *Pelkola* case, where the evidence was deemed incompetent, its admission was not ground for reversal.

Defendant further contends that the People did not establish defendant's guilt beyond a reasonable doubt, on the ground that the identification was uncertain and police induced. This court has reiterated the rule that a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful and uncertain. (*People* v. *Williams*, 12 Ill.2d 80, 82; *People* v. *Horodecki*, 15 Ill.2d 130, 134.) However, a single identifying witness has been held sufficient to sustain a conviction. *People* v. *Hunter*, 23 Ill.2d 177, 180; *People* v. *Brown*, 16 Ill.2d 482, 485, 486.

In the case at bar the evidence shows that the identifying witness, Lux, had an opportunity to see the defendant in the lighted vestibule at the time of the robbery, and stated that defendant was "standing right next to me." He not only described defendant's height, build, color and

clothing to the police when they arrived on the scene, but also identified him in the line-up at the police station; and he never wavered in his identification of defendant in his testimony and cross-examination at the trial. We find these circumstances in no way comparable to the criticized identification in *People* v. *Jones*, 24 Ill.2d 71, 74, cited by defendant. There an identifying witness described defendant as wearing a light colored jacket, but admitted he "did not have an opportunity to see the man's face."

Moreover, the identification in the case at bar was even more cogent than that deemed sufficient in *People* v. *Capon*, 23 Ill.2d 254, where there wasn't even a line-up, and the identifying witness saw defendant for three minutes on the date of the robbery in June and only identified him from a book of photographs sometime the following November, and again in court. The court there stressed the witness's original opportunity to observe defendant and that her identification was positive, credible and unshaken. The court there rejected defendant's contention that he was identified by his clothing, rather than by his limp or description.

Similarly, in the instant case, in an attempt to cast doubt on the identification, defendant claims that the line-up was not conducive to an accurate identification. Since defendant removed the hat and coat prior to the identification by Lux, and since the evidence is conflicting with reference to the time when the gun was handed to defendant and when Lux identified him, it was for the jury to resolve the conflicts relating to the line-up. It was their province to determine the credibility to be given the complaining witness who positively identified defendant, as compared to the doubts cast by the defendant's witnesses, who were under indictments and arrest for other crimes.

If positive identification at the trial, as made by Lux, is sufficient without the additional line-up (*People* v. *Capon*, 23 Ill.2d 254), then we cannot see how the aspersions which

defendant endeavored to cast on the line-up can be deemed reversible error. The evidence of identification, moreover, considered along with the evidence of defendant's flight at the time he and his co-defendant were first approached by the officers in the squad car immediately after the robbery, his violent resistance at the time of apprehension, and his actual oral confession, all were sufficient to establish his guilt beyond a reasonable doubt.

Defendant argues, finally, that the admission of the gun was error, since it was procured through an unlawful search and seizure. That ground was apparently not interposed in the trial court. Inasmuch as defendant made no motion to suppress the gun on grounds of unlawful search and seizure prior to trial, such grounds must be deemed waived. This court has adhered to the rule followed by other jurisdictions that where no timely motion to suppress the evidence is made, evidence, even if obtained by an unlawful search and seizure, is admissible. *People* v. *Kalpak,* 10 Ill.2d 411, 429; *People* v. *Gambino,* 12 Ill.2d 29, 33-34.

From the limited evidence on this matter in the record, since the weapon was found in the immediate physical area in the course of a search incidental to a lawful arrest, it could be seized as an incident of arrest. (*People* v. *Heidman,* 11 Ill.2d 501, 508.) If the arrest and search was unlawful, it was defendant's obligation to present evidence thereon in conection with a motion to suppress. *People* v. *Elmore,* 16 Ill.2d 412, 414; *United States* v. *Salli,* 115 F.2d 292, 294.

Moreover, since the gun was found in plain view, on top of a cabinet just inside the room where defendant was apparently "hiding out" and was identified by the witness Lux as the "same size, shape and color" as the weapon used by defendant at the time of the robbery, the weapon was sufficiently connected with defendant's person and with the crime.

582

No proper analogy can be made between the circumstance here and those in *People* v. *Berardi*, 321 Ill. 47, cited by defendant. There the inadmissible gun was found hidden in a trunk belonging to another person and in that person's home, and there was no proof that it was "in the hands of any one of the alleged robbers on the night of the robbery." We find more apposite and determinative *People* v. *Mikka*, 7 Ill.2d 454, 460, where a gun identified as "very similar" was used by defendant in a robbery and found in the car in which defendant was arrested.

Inasmuch as there was no error in the admission of either defendant's oral confession or the weapon, and defendant's guilt was established beyond a reasonable doubt, the conviction here must be affirmed.

*Judgment affirmed.*