THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Petitioner-Appellant, *v.* EARL A. ROEHRIG *et al.*, Defendants-Appellees.

Fifth District    No. 75-494

Opinion filed December 23, 1976.—Rehearing denied February 4, 1977.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier and Russell Classen, Assistant Attorneys General, of counsel), for appellant.

Kassly, Weihl, Bone, Becker & Carlson, of Belleville (Maurice E. Bone and Barry D. Dix, of counsel), for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The petitioner, the Illinois Department of Public Works and Buildings, appeals from a judgment of the circuit court of St. Clair County which awarded the defendant, Earl Roehrig, $165,000 in a condemnation suit as just compensation for 13.78 acres of his land.

The principal questions in this appeal are whether Illinois civil procedure allows the use of a motion *in limine* to prevent the offering of inadmissible evidence at trial, and whether a circuit court's error in granting a landowner the right to open and to close a condemnation suit, despite his failure to file a cross-petition for damages to that part of his land not condemned, requires reversal of the circuit court's judgment.

On April 21, 1971, the Illinois Department of Public Works and Buildings (hereinafter called "the Department") filed two petitions in the circuit court of St. Clair County to condemn 5.10 acres out of a 142.5-acre tract owned by Earl Roehrig alone, and 8.68 acres out of a 79.6-acre tract owned by Earl Roehrig and his wife, Virginia Roehrig, as joint tenants. The total area which the Department sought to take from the Roehrigs was thus 13.78 acres.

Both the Roehrigs' tracts were located about 3 miles south of Lebanon, Illinois, along Illinois Route 4. The 142.5-acre tract, which the Department's petition called tract 115, lay perpendicular to Route 4 with two-thirds of its area west, and one-third of its area east, of Route 4. The 79.6-acre tract, which the Department's petition denominated tract 119, lay south of the first tract and east of Route 4. The map on the following page illustrates the course of Interstate 64 through the Roehrigs' property. The shaded areas, comprising tracts A and B of parcel 115 and tracts B, C, and E of parcel 119, represent the 13.78 acres of land condemned in this proceeding.

| ACRES |
|---|
| PARCEL 115 |
| BEFORE TAKING 142.5 |
| R-O-W TAKEN 5.1 |
| REMAINING 137.4 |
| PARCEL 119 |
| BEFORE TAKING 79.6 |
| R-O-W TAKEN 8.7 |
| REMAINING 70.9 |
| TOTAL AREA TAKEN |
| PARCELS 115 AND 119 = 13.78 |
| Access Control |

**PARCEL 115**

| TRACT | PURPOSE | ACRES ROW | ACRES EASEMENT | ACRES WITHIN | REMARKS |
|---|---|---|---|---|---|
| A | RIGHT OF WAY | 0.10 | | | |
| B | RIGHT OF WAY | 5.00 | | 1.23 | CONSTRUCTION ROAD |
| C | FOR DETOUR ROAD | | 0.70 | 0.06 | CONSTRUCTION EASEMENT |
| D | FOR DETOUR ROAD | | 0.20 | | FOR DETOUR EASEMENT |
| E | FOR ACCESS CONTROL | | 0.02 | | CONSERVATION EASEMENT |
| TOTAL | | 5.10 | 0.92 | 1.29 | |

**PARCEL 119**

| TRACT | PURPOSE | ACRES ROW | ACRES EASEMENT | ACRES WITHIN | REMARKS |
|---|---|---|---|---|---|
| A | RIGHT OF WAY | | | 0.01 | |
| B | RIGHT OF WAY | 0.59 | | | |
| C | RIGHT OF WAY | 2.01 | | | |
| D | RIGHT OF WAY | | | 0.13 | |
| E | RIGHT OF WAY | 6.28 | | 0.23 | |
| F | FOR DETOUR ROAD | | 1.29 | | CONSTRUCTION EASEMENT |
| TOTAL | | 8.68 | 1.29 | 0.37 | |

PARCEL 115, EARL ARTHUR ROEH
PARCEL 119, EARL A. & VIRGINIA L. ROEHRIG
F.A.I. ROUTE 64, SECTION 82-B
ST CLAIR COUNTY, ILLINOIS

The Department earlier had condemned part of the Roehrigs' land as a site for an interchange at the junction of Route 4 and Interstate 64. An alteration in the design of the entrance and exit ramps, which was intended to make the ramps longer and safer, required the Department to seek condemnation of the additional 13.78 acres of the Roehrigs' land involved in this case. This acreage consisted of five irregularly shaped parcels located at the northwest, northeast, and southeast corners of the interchange. (See map.)

On April 22, 1971, the Department moved for a quick take of the 13.78 acres pursuant to section 2.1 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.1). After the Department deposited with the treasurer of St. Clair County 125% of the amount preliminarily determined by the circuit court to be just compensation, in accordance with section 2.3 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.3), the circuit court ordered, on July 23, 1971, that the fee simple interest in the acreage should be vested in the Department immediately.

Because the Department demanded a jury trial, the issue of just compensation for the Roehrigs' land was tried before a jury pursuant to section 1 of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 1) and article I, section 15, of the 1970 Illinois Constitution. The trial began on April 21, 1975.

The Roehrigs never filed a cross-petition for damages caused by the condemnation to the part of their land which was not condemned. Instead, they filed a motion in limine on April 21, 1975, requesting that the Department be forbidden from referring in its opening statement to, and introducing evidence on, benefits that would accrue to the rest of their land as a result of the condemnation. The motion also requested that the Department be prohibited from referring to the previous taking of a portion of the Roehrigs' land for the interchange. The circuit court granted both parts of the motion.

The circuit court allowed the Roehrigs to make their opening statement before the Department made its opening statement. Throughout the trial the Roehrigs preceded the Department. They introduced their evidence before the Department introduced its evidence. They spoke first and last in the presentation of closing arguments. The Department objected on the second day of trial, after the completion of opening statements, the examination of one witness, and the jury's view of the premises, to the Roehrigs' being allowed to open and to close in the condemnation suit. The record also indicates, however, that the Department raised this objection before the opening statements were given.

The Roehrigs called three, and the Department called two, expert witnesses to testify concerning the fair market value of the land that was taken.

Two of the Roehrigs' witnesses were brothers who had served as real estate agents in numerous sales of land near interstate highway interchanges. They testified that, of the 222.1 acres owned by the Roehrigs, 22.1 acres along the interchange ramps were best suited for commercial use as a location for gas stations, restaurants, and motels, and the remaining 200 acres were best used as farmland. They valued the commercial land at $12,632 per acre, or $280,000 for 22.1 acres, and the farm land at $800 per acre, or $160,000 for 200 acres. Their estimate of the value of all the Roehrigs' land was thus $440,000. They regarded the 13.78 acres condemned by the Department as composed of 13.68 acres of commercial land, worth $172,800 and .10 acre of farmland, worth $100, with a total value of $172,900.

Another witness for the Roehrigs, a real estate broker and appraiser, testified that the 222.1 acres consisted of 204 acres of farmland, worth $163,200, and 18 acres of potentially commercial land, worth $235,200, and had a total value of about $398,000. He said that the best use of the 13.78 acres of condemned land was commercial, and that it was worth $180,000.

In evaluating the condemned land, the Roehrigs' witnesses considered sale of comparable land. The land most like the 13.78 acres in this case was five acres at the northeast corner of the same interchange which Earl Roehrig sold to an oil company for $48,500 in 1967. One witness testified that inflation had increased the value of the 5-acre tract by $19,400 between 1967 and 1971, and that the laying of a city water main past the tract had added $15,000 to its value as a site for a gas station. The value of these five acres, as of the time the Department filed its petitions in 1971 to condemn the additional 13.78 acres of the Roehrigs' land was, therefore, $82,900.

One expert witness for the Department testified that the total value of the Roehrigs' farm was $446,000. He said three potential commercial sites existed on this property which were worth $189,000. Nevertheless, he maintained that the best use of the 13.78 acres condemned by the Department was agricultural, and that the acreage's value was $46,074.

The Department's other expert testified that all the Roehrigs' land was worth $417,000. He said that land near the interchange had commercial potential and was worth $189,000. He also asserted, however, that the 13.78 acres taken by the Department had a value of only $19,000.

During the conference on jury instructions the attorney for the Roehrigs suggested that Virginia Roehrig had died during the pendency of the suit. Earl Roehrig then remained as the only defendant in the case.

Among other instructions, the circuit court charged the jury with Illinois Pattern Jury Instruction (IPI), Civil No. 300.44, which says:

> "In arriving at the fair cash market value of the property taken, you should determine its value considered as a part of the whole

tract before the taking and not its value as a piece of property separate and disconnected from the rest of the tract."

After the jury retired to deliberate, it sent the following written question to the circuit court:

"The jury would like some further definition of 'value considered as part of the whole tract.'

Does this mean all 13.78 acres must be considered commercial because part of it has commercial possibilities? Does it mean all the land in yellow boundaries must be considered as a 'whole' of farm or commercial? Does it mean the part taken only in our estimation as possible commercial and/or farm land?"

The court said it could provide no further instructions and directed the jury to decide the case with the instructions already given.

The jury reached a verdict that $165,000 represented just compensation to Earl Roehrig for the 13.78 acres of his land that were condemned. The circuit court entered judgment upon the verdict.

The Department argues on appeal, first, that the circuit court abused its discretion in granting the motion *in limine* and thereby committed prejudicial error. The Department asserts, second, that the circuit court erred in refusing to instruct the jury further to dispel its confusion. The Department contends, third, that the circuit court erred in allowing the landowner to open and to close the condemnation suit when he had not filed a cross-petition for damages to that part of his land not condemned.

The use of motions *in limine* is not authorized by any statute nor by any rule of the Illinois Supreme Court. No Illinois decision expressly approves the use of such motions in civil cases, although *Fopay v. Noveroske*, 31 Ill. App. 3d 182, 334 N.E.2d 79, and *Bruske v. Arnold*, 100 Ill. App. 2d 428, 241 N.E.2d 191, tacitly recognize their validity. One decision, *People v. Van Riper*, 127 Ill. App. 2d 394, 262 N.E.2d 141, apparently sanctions the use of such motions, under some circumstances, in criminal cases. Before considering whether the circuit court improperly granted the Roehrigs' motion this court will decide whether such motions are a valid part of Illinois civil procedure.

A motion *in limine*, as employed in other jurisdictions, is a pretrial motion which seeks an order excluding certain evidence, and references to such evidence, on the ground that its admission would violate some ordinary rule of evidence. (See Annot. 63 A.L.R.3d 311 (1975).) The motion is analogous to a pretrial motion to suppress evidence in a criminal case. The primary difference between these motions is that a motion to suppress evidence is not based upon the ordinary rules of evidence, but upon a defendant's constitutional rights. (See Ill. Rev. Stat. 1975, ch. 38, pars. 114—11 and 114—12.) A second difference is that making a pretrial motion to suppress evidence may be necessary for a defendant to

preserve his right to object to evidence on a constitutional ground. (*People v. Ikerd*, 26 Ill. 2d 573, 188 N.E.2d 12; Ill. Rev. Stat. 1975, ch. 38, par. 114—12(c).) Filing a motion *in limine*, however, is never necessary for a party to preserve his right to object to the evidence on the basis of ordinary evidential rules. *Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366 (1962).

The advantage of a motion *in limine* is that it allows a party to obtain an order excluding inadmissible evidence without having to object to, and thereby to emphasize, the evidence before the jury. Use of such a motion thus enables a party to prevent his opponent beforehand from attempting to prejudice the jury by offering evidence which the opponent knows should be excluded or stricken upon objection.

Because the correct use of these motions promotes jury trials that are devoid of prejudice, this court believes such motions should be explicitly recognized as part of the civil procedure of this State. (See *Burrus v. Silhavy*, 155 Ind. App. 558, 293 N.E.2d 794 (1973); Note, *Pretrial Exclusionary Evidence Rulings*, 1967 Wis. L. Rev. 738, 757.) Even in the absence of authorization by statute or Illinois Supreme Court rule, the inherent power of a circuit court to admit or to exclude evidence is sufficient to enable it to entertain a motion *in limine*. *Burrus v. Silhavy*, 155 Ind. App. 558, 293 N.E.2d 794 (1973); Davis, *Motions in Limine*, 15 Clev.-Mar. L. Rev. 255, 257 (1966).

There are logically two steps involved in a circuit court's ruling upon a motion *in limine*. The first is for the circuit court to decide whether, as the moving party asserts, the rules of evidence require exclusion of the subject matter of the motion. If they do not, the motion must be denied. If, however, evidential rules require the exclusion of this evidence, the circuit court has discretion to grant the motion and to enter an order before trial excluding the evidence, or to deny the motion and to leave to the moving party the procedure of objecting to the evidence when it is offered at trial. See *People v. Van Riper*, 127 Ill. App. 2d 394, 398, 262 N.E.2d 141, 144.

In exercising its discretion, the circuit court should balance the prejudice that might be avoided against the complication or inconvenience that might be caused by granting the motion. When the former outweighs the latter, the motion should be granted. But when the motion requests an exclusionary order so complicated that compliance with it would be difficult for the opposing party, despite a sincere effort to comply, the motion should be denied.

■■ In reviewing a circuit court's granting of a motion *in limine*, an appellate court should first consider whether the circuit court properly applied the rules of evidence. If the circuit court correctly applied the rules of evidence, the appellate court should then decide whether the

circuit court abused its discretion by granting the motion and making a pretrial order excluding the evidence. If the rules of evidence have been correctly applied, a circuit court's granting of the motion can be reversible error only if the circuit court thereby abused its discretion. See *People v. Van Riper*, 127 Ill. App. 3d 394, 262 N.E.2d 141.

The circuit court's order in this case precluded the Department from introducing evidence concerning a previous condemnation of the Roehrigs' land for the interchange, and also evidence concerning the increase in the value of the rest of the Roehrigs' land that would be caused by the present condemnation. This court must initially decide whether the order represented a correct application of the rules of evidence.

■■ ■ Evidence of prior condemnations is not admissible in a condemnation proceeding because its potentially prejudicial impact outweighs its probative value. (*Department of Public Works & Buildings v. Pellini*, 7 Ill. 2d 367, 373, 131 N.E.2d 55, 59.) Moreover, evidence of benefits created by a condemnation for the part of a tract not condemned is admissible only as a counter to the landowner's evidence of damages to that part of the tract. If a landowner does not file a cross-petition for damages to the part of his land which is not condemned, such evidence of benefits is inadmissible. (*Cohen v. City of Chicago*, 377 Ill. 221, 36 N.E.2d 220; *Department of Public Works & Buildings v. Morse*, 3 Ill. App. 3d 721, 279 N.E.2d 150.) Because the Roehrigs filed no cross-petition for damages, the circuit court's granting both parts of their motion *in limine* was a proper application of the rules of evidence.

The pretrial order excluding the objectionable evidence caused no discernible inconvenience to anyone, and it possibly helped to prevent the jury from being prejudiced against the Roehrigs. The circuit court acted within its discretion, therefore, by granting the motion.

The Department's argument that granting the motion was prejudicial error is not sound. As the Department asserts, it had the right to introduce evidence concerning the value of the entire tract before any part thereof was condemned. (See *Department of Public Works & Buildings v. Foreman State Trust & Savings Bank*, 363 Ill. 13, 21, 1 N.E.2d 75, 79; *Department of Public Works & Buildings v. Oberlaender*, 42 Ill. 2d 410, 247 N.E.2d 888.) It also had the right to develop its own theory about the value of the land that was condemned. (*Union Electric Power Co. v. Sauget*, 1 Ill. 2d 125, 130 115 N.E.2d 246, 249.) The circuit court's granting the motion did not infringe the first right, however, because the pretrial order only prevented the Department from introducing evidence on the value of the tracts after the condemnation. The pretrial order did not prevent the Department from introducing any evidence on the value of the Roehrigs' tracts before the condemnation. Indeed, the Department's two experts gave their estimates of the value of the tracts before the

taking, which were $446,000 and $417,000 respectively. Neither did the granting of the motion violate the second right advanced by the Department. A party's right to develop his own theory about the value of condemned land is limited by all the rules of law applicable to condemnation proceedings, and cannot be used to circumvent those rules. Because the Roehrigs did not file a cross-petition for damages to the part of their land not taken, the Department was not entitled to introduce evidence of benefits caused for that part by the condemnation. (*Cohen v. City of Chicago*, 377 Ill. 221, 36 N.E.2d 220; *Department of Public Works & Buildings v. Morse*, 3 Ill. App. 3d 721, 279 N.E.2d 150.) The Department cannot rely upon its right to develop a theory about the value of the condemned land as authorization for presenting evidence on the enhanced value of the land not condemned in the absence of a cross-petition for damages filed by the Roehrigs. The Department's right to develop its own theory thus does not provide it a valid objection to the granting of the motion.

Another contention by the Department about the motion *in limine* has more merit. The Department asserts the motion should have shown the Roehrigs had reason to believe that the Department would present the inadmissible evidence at trial. Such a showing is desirable in order to reveal to the circuit court that the motion *in limine* is not frivolous. (See Note, *Pretrial Exclusionary Evidence Rulings*, 1967 Wis. L. Rev. 738, 742.) The Roehrigs' motion did not expressly show they had reason to believe the Department would offer the inadmissible evidence, but this defect must be regarded as harmless because the Department did seek to introduce the inadmissible evidence at trial.

■■ A final contention by the Department concerning the motion lacks merit. The Department asserts the motion was deficient without a statement why an objection at trial would fail to give the Roehrigs adequate relief from an attempt by the Department to introduce inadmissible evidence. The making of a motion in limine, however, is an implicit statement that the movant believes he will suffer prejudice if he has to object to the evidence before the jury. If the probability that the inadmissible evidence will be offered at trial is apparent, as in the present case, the circuit court can draw upon its own experience in deciding whether the movant will likely be prejudiced by having to object to the evidence at trial. An explicit statement in a motion *in limine* as to why the movant would suffer prejudice if required to object at trial would probably affect the circuit court's decision but little, and so should not be required. The Roehrigs' motion, therefore, was not deficient for its failure to state explicitly why an objection at trial would not give them adequate relief.

The Department's second argument, which concerns instructions to the

jury, will next be considered. One Illinois decision, *Hunter v. Smallwood*, 28 Ill. App. 3d 386, 328 N.E.2d 344, suggests that in a civil case a circuit court has a duty to give further instructions, when the jury requests them, in order to clarify the original instructions and to dispel the jury's confusion. This suggestion can be true only when the jury seeks clarification of a point of law. (See *People v. Kacala*, 7 Ill. App. 3d 1029, 1035, 288 N.E.2d 622, 627.) If the jury's request for further instructions is essentially a request for advice on how to decide a question of fact, the circuit court must refuse to give the additional instructions. Giving an additional instruction which informs the jury how to decide a question of fact would frustrate the parties' constitutional and statutory right to a trial by jury and so must be avoided. See 1970 Ill. Const. art. I, §§ 13 and 15; Ill. Rev. Stat. 1971, ch. 47, par. 1; ch. 110, par. 64.

In the present case, the jury asked for an explanation of the phrase, "value considered as part of the whole tract," which was contained in IPI Civil No. 300.44. The jury's written question revealed that it wished to know what effect the phrase should have upon its decision concerning the relative amounts of commercial and agricultural land in the 13.78 acres of condemned land.

The possible proportions of commercial and agricultural land in the 13.78 acres, however, were the basis for the difference between the Department's theory and the Roehrigs' theory about the value of the condemned land. The expert witnesses for the Department and the Roehrigs testified that the portion of the Roehrigs' property best suited for agricultural use was worth from $735 to $800 per acre. The Roehrigs' witnesses said that the value of the land best suited for commercial use was $12,632 per acre. The Department's witness tacitly admitted a similar estimate of the value of the commercial part of the Roehrigs' property by saying their entire 222.1 acres were worth between $417,000 and $446,000. Consequently, little dispute existed over the value of the commercial acreage and agricultural acreage owned by the Roehrigs. The only real dispute between the parties was this: The Department asserted that most of the 13.78 acres of condemned land were best suited for agricultural use, whereas the Roehrigs asserted that all 13.78 acres were best suited for commercial use.

■■ Stating the parties disagreement in this manner shows the jury's request for an explanation of an instruction was actually a request for assistance in deciding the most important factual issue in the case, that is, how much of the 13.78 acres should be regarded as agricultural and how much should be regarded as commercial. If the circuit court had given the requested explanation by a further instruction, it would have undermined the right of both parties to a trial by jury. The circuit court properly refused, therefore, to give an additional instruction.

The Department's last argument concerns the right to open and to close a condemnation proceeding. The petitioner in a condemnation proceeding has the right to open and to close, unless the landowner filed a cross-petition for damages to that part of his land not taken. If the landowner files a cross-petition, he may, by a motion made before trial, choose to open and to close. Reliance by the petitioner upon the quick take provision of the Eminent Domain Act (Ill. Rev. Stat. 1971, ch. 47, par. 2.1), however, does not affect the allocation of the right to open and to close. *Department of Business & Economic Development v. Brummel,* 52 Ill. 2d 538, 288 N.E.2d 392.

The Roehrigs did not file a cross-petition for damages to the portion of their land not condemned. The Department thus had the right to open and to close even though it initiated a quick take of the Roehrigs' property. The circuit court erred by allowing the Roehrigs to open and to close the proceeding.

If the Department had permitted the Roehrigs to begin their presentation of evidence without objecting to their being given the right to open and to close, it would have waived this objection. (*Department of Public Works & Buildings v. Hanna,* 4 Ill. App. 3d 884, 282 N.E.2d 269.) The record sufficiently indicates, however, that the Department objected, even before the Roehrigs made their opening statement, and so the Department did not waive its objection to the circuit court's error in allowing the Roehrigs to open and to close.

The sole remaining question is whether this error requires reversal of the circuit court's judgment that $165,000 was just compensation to Earl Roehrig for his 13.78 acres of land.

An examination of a map of the interstate highway through the Roehrigs' property shows that the Roehrigs' theory about the value of the condemned land was, and the Department's theory was not, tenable. (See map.) According to the Department's own expert witnesses, the Roehrigs' land near the interchange had commercial potential and a value of $189,000, out of a total value of the Roehrigs' property that was between $417,000 and $446,000. The 13.78 acres condemned in this proceeding mostly bordered the interchange, and, therefore, must have been a large part of the potentially commercial land to which the Department's witnesses referred. The other testimony by these witnesses, that the 13.78 acres were mainly agricultural land worth between $19,000 and $46,074, thus appears clearly erroneous. The estimates of the Roehrigs' expert witnesses, that the value of the 13.78 acres of condemned land was about $180,000, seem more accurate, especially in view of the evidence that a 5-acre tract on the same interchange had been sold to an oil company for $48,500 in 1967 and was worth $82,900 in 1971.

■■ When the evidence is so analyzed, the correctness of the jury's

verdict and the circuit court's judgment for $165,000 becomes apparent. If the judgment were reversed and the case retried because of the circuit court's error in permitting the Roehrigs to open and to close, the Department could not justly expect a substantially lower judgment. This court believes, therefore, that the error in allocating the right to open and to close the condemnation proceeding should be regarded as a harmless error not requiring the reversal of the judgment. See *Chicago Land Clearance Com. v. Darrow*, 12 Ill. 2d 365, 373, 146 N.E.2d 1, 6.

The judgment of the circuit court of St. Clair County awarding Earl Roehrig $165,000 as just compensation for 13.78 acres of his land is affirmed.

Judgment affirmed.

KARNS, J., concurs.

Mr. JUSTICE JONES, dissenting:

I am in agreement with all portions of the majority opinion, save the last, which holds it to have been harmless error when the landowner was permitted to open and close and go forward with the evidence. In my opinion this error was manifestly unfair and prejudicial and cannot be viewed as harmless. Furthermore, the premise that serves as the basis for the conclusion of the majority that the error regarding the right to open and close is without foundation in the record; in fact, it is contraindicated. I therefore respectfully dissent.

The supreme court case which controls the case under consideration is *Department of Business and Economic Development v. Brummel*, 52 Ill. 2d 538, 288 N.E.2d 392. It is cited, but not followed, by the majority. In *Brummel* the court stated:

> "There is no reason why the rule announced in *McReynolds* and *South Park* [*McReynolds v. Burlington & Ohio River Ry. Co.*, 106 Ill. 152; *South Park Commissioners v. Trustees of Schools*, 107 Ill. 489, cases establishing the rule in Illinois that the condemnor has the burden of going forward with the evidence and the right to open and close argument] should not continue in condemnation cases where there has been no vesting of title in the condemnor under the quick-take statute and where there has been no cross-petition for damages to property not taken.
>
> *In these situations the condemnor should open and close at all stages.*"

(Emphasis added.) 52 Ill. 2d at 542, 288 N.E.2d at 394-95.

Any practicing trial lawyer knows that the technique employed in

prosecuting a lawsuit differs vastly from that employed in defending one. Metaphorically stated, it is a matter of either thrust or parry. The purpose, direction and force of the contrasting actions are diametrically opposed.

In the *Brummel* case it was the landowner who was required to switch roles and assume an offensive position when he had prepared his case on the assumption he would be defending. *Brummel* pointed out the prejudice resulting from a role-switch in the following language:

> "On the day of the trial he learned that he must assume the burden of going forward with evidence as to the value of the land. It is this unexpected switch in the role which the landowner was required to play, from one who could assume a defensive position to one who is compelled to go forward with evidence of value, which we must consider prejudicial. *This is especially so since he had prepared his case for the former role.*" (Emphasis added.) 52 Ill. 2d at 541, 288 N.E.2d at 394.

The court found that the error was not simply "a single erroneous ruling of the trial court the effect of which is readily discernible, but was of such magnitude as to reverse the entire presentation of the case." (52 Ill. 2d at 541, 288 N.E.2d at 394.) I am unable to see any reason why the Department would be any less prejudiced by being required to switch roles than would a landowner in the same situation. They appeared for trial, prepared to carry their burden of proof by proceeding with the evidence, making opening and closing arguments and being the party expected to go forward with the trial. Instead, as the case was about to go to trial, they were told they would not have the right to open and close and go forward with the evidence. They were thus thrust into a defensive posture from which they had to carry the burden of proof in the case; a crippling and highly prejudicial shift.

I can find no Illinois case which has held that the denial to the party litigant to whom it belongs of the right to open and close can never be so prejudicial as to require a new trial. On the contrary, it has been held that the right to open and close is a substantial right which does not rest merely in the discretion of the trial judge. "In a trial before a jury, where the pivotal fact is in sharp dispute, the advantage of opening and closing the evidence and arguments becomes one controlled by rules of law defining rights and is not left to the discretion of the judge." *Liptak v. Security Benefit Association*, 350 Ill. 614, 619, 183 N.E. 564.

I am in sharp disagreement with that view the majority takes of the evidence in the case that leads them to discount and reject the testimony of the Department's witnesses that the highest and best use of the 13.78 acres in question was agricultural. That testimony they term "clearly erroneous." They state that the 13.78 acres condemned in this proceeding

mostly bordered the interchange, and, therefore, must have been a large part of the potentially commercial land to which the Department's witnesses referred.

The latter reference is, of course, true. The frontage property is the commercial property—virtually all of the 13.78 acres taken. What the majority overlooks is that *after* the taking the Roehrigs still own the same amount of frontage property. Although the commercial (frontage) property has been relocated somewhat by this second taking, the commercial property remains intact as such—it is 13.78 acres of the farmland remaining that has been shuffled from the scene. The theory of the Department that the highest and best use of the land taken was for farming is not, in my view, "clearly erroneous" and cannot be so easily discounted as in the majority opinion. There was a distinct conflict between two equally tenable theories, and the allocation of the advantage of opening and closing the evidence and the arguments may well have been a deciding factor in the case. Therefore, I would reverse for a new trial.