THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
WALTER H. SMITH, Defendant-Appellee.

Second District   No. 2—91—1461

Opinion filed July 29, 1993.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

No brief filed for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Walter H. Smith, was indicted for aggravated driving under the influence of alcohol (DUI) and driving with a blood-alcohol concentration (BAC) of 0.10 or more, which acts resulted in great bodily harm to another (counts I, II) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(d)(3) (now 625 ILCS 5/11—501(d)(3) (West 1992)); he was also indicted for DUI and driving with a BAC of 0.10 or more (counts III, IV) (Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501(a)(1), (a)(2) (now 625 ILCS 5/11—501(a)(1), (a)(2) (West 1992))). The offenses were alleged to have taken place on December 19, 1989.

Following the denial of its motion to reconsider and pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)), the State takes an interlocutory appeal of the circuit court's order of October 15, 1991, granting defendant's motion to suppress the evidence of certain blood-alcohol tests allegedly taken on December 19, 1989, in the course of emergency medical treatment (see Ill. Rev. Stat. 1939, ch. 95½, par. 11—501.4 (now 625 ILCS 5/11—501.4 (West 1992))). The State filed its certificate of impairment. Defendant has not filed an appellee's brief, and we will therefore consider the appeal under the guidelines established in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

On appeal, the State argues that the trial court erred in granting defendant's motion to suppress because defendant failed to make a *prima facie* case and the court abused its discretion in denying the State's oral motion for a continuance to obtain the presence of Dr. Strom, a hospital physician whom the State characterized as a material witness.

We affirm.

■■ Defendant's motion to suppress the results of the BAC test stated that he did not consent to the blood test and that the test was not taken in accordance with the statutory requirements of section 11—501.4 of the Illinois Vehicle Code (Code). In DUI and reckless homicide cases, that section permits, as a business record exception to the hearsay rule, the admission into evidence of written

blood-alcohol test results when the test is conducted in the regular course of providing emergency medical treatment if each of the following criteria is met:

"(1) the blood alcohol tests were ordered by a physician on duty at the hospital emergency room and were performed in the regular course of providing emergency medical treatment in order to assist the physician in diagnosis or treatment;

(2) the blood alcohol tests were performed by the hospital's own laboratory; and

(3) the written results of the blood alcohol tests were received and considered by the physician on duty at the hospital emergency room to assist that physician in diagnosis or treatment." Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4 (now 625 ILCS 5/11—501.4 (West 1992)).

At the outset of the hearing on defendant's motion on September 13, 1991, the court noted that defense counsel presented a letter from Dr. Strom stating that the doctor could not be there. Defense counsel stated that defendant was ready to proceed without him and noted that defendant would be moving to dismiss the cause for lack of a speedy trial. The State indicated it might wish to move for a continuance to obtain the testimony of Dr. Strom if necessary. The court replied, "Well, let's cross that bridge when we get to it."

Defendant testified that he was at KSB Hospital in Dixon, Illinois, on December 19, 1989, and he did not give anyone consent to take his blood that evening.

Beatrice Letcher testified that she was employed as a laboratory technician at the KSB Hospital on the night shift of December 19, 1989. When asked whether she was ordered to do certain laboratory work regarding defendant, she replied, "Looks like it." She said she saw a "CBC," or "complete blood count, set of electrolytes, glucose." She performs laboratory work when she is called to the emergency room. She said there is a written order, usually written by a doctor. She could not remember which doctor was on duty that evening, but thought Dr. Yunez was the treating physician. When asked if she recalled if on the order sheet he ordered her to do any blood test for ethanol, she replied, "I didn't see it." She said she had made a cursory review of the progress notes of the patient's condition. When asked again if she was able to determine whether any blood work for alcohol was requested by the treating physician, she stated, "I didn't see any order."

On cross-examination, Letcher was asked if there was another emergency room doctor, Dr. John Strom, who came in after Dr. Yunez had seen defendant; she replied, "I don't know." She conceded that it was possible that he was there, but she did not know specifically who ordered her to perform the blood-alcohol test that night. She stated that she did the blood test because there was a requisition. When asked whether she would have taken the blood had a physician not ordered the test, she replied, "No. Somebody had to order it." When asked whether a physician had to order the test, she answered, "I assume so." She had no idea whether Dr. Yunez or Dr. Strom was involved. She testified that she performed the tests in the laboratory and recorded them on the log sheets and on the requisition. She could not recall to whom she had reported the results or whether they were reported to the doctor who attended defendant.

On re-cross-examination, Letcher stated that the records indicated that Dr. Yunez was on duty in the emergency room, but she had no idea who was on duty. She never saw a written order from a doctor.

Letcher further stated that she did not know whether Dr. Yunez or Dr. Strom ordered the blood test and had no idea who was the treating physician. When she saw the paper work on the emergency room treatment, it did not show that a blood-alcohol test was ordered.

The State argued that defendant had not met the burden of showing that the steps were not followed and that the motion be denied. Alternatively, the State sought a continuance to take Dr. Strom's testimony. The State was relying on defendant's subpoena of Dr. Strom. However, defense counsel argued that he did not have to call Dr. Strom and noted that previously the State had twice asked for continuances and had subpoenaed Dr. Strom. The trial court then took the matter under advisement.

In its detailed memorandum decision, the court reviewed the chronology of the significant events in the progress of the case. On September 17, 1990, defendant appeared for arraignment, filed a motion for discovery and made a demand for a speedy trial. The matter was scheduled for pretrial conference on October 1, 1990. On that date, the matter was continued to October 22, 1990, by agreement and then by joint motion to November 19, 1990, when a jury trial was set for January 8, 1991. No trial was held on that date. Instead, defendant filed a motion to suppress which was set for an evidentiary hearing on March 8, 1991.

The court determined that the motion was not a traditional motion to suppress, but rather was in the nature of a motion *in limine*. On March 8, the hearing was continued on the motion of the State to April 11, 1991. The record shows that the State caused a subpoena to be issued and served on Dr. Strom on March 1, 1991, and another issued on March 8, 1991, which was served on March 14. On April 11, 1991, the matter was continued on the motion of defendant to May 16, 1991. However, on May 14, the State again obtained a continuance to June 19, 1991. The record shows that the State caused another subpoena to be issued to Dr. Strom on May 15 which was served on May 17. No hearing was held on June 19. On July 2, 1991, the State sought another motion for a continuance to July 11 by means of a written motion. The motion stated that Dr. Strom was a "crucial" witness to the presentation of the State's case, that he was unavailable to testify, and the State would be severely prejudiced if Dr. Strom could not testify. The State's motion was granted on July 11, 1991, when the matter was set for July 19, 1991. There was no activity on July 19, 1991, and the cause lay dormant until September 4, 1991, when it was set for hearing on September 13, 1991.

The court noted that although defendant did not object to the State's requests for continuances, defendant did not consent to them and insisted that the record clearly show that the motions were being made by the State. However, the trial court denied defendant's September 13 motion to dismiss the case on speedy trial grounds.

Regarding the motion to suppress, the court observed that the State had conceded that an evidentiary hearing was appropriate prior to trial. If defendant's motion had not been filed, the State would have had the burden of meeting the statutory requirements to introduce the test results at the trial. The court concluded that the State had assumed the burden of proving the foundation for the admission of the blood test, particularly because it had filed its July 2 motion in which it noted that Dr. Strom was a crucial witness to its case and would be prejudiced by his absence. The court then pointed out that the State had again orally requested a continuance at the date of the hearing so it could produce Dr. Strom, thereby again conceding its burden of showing compliance with the statute, and no explanation had been given for its failure to produce Dr. Strom. The court also found that there was no indication that Dr. Strom was unavailable under section 114—4(c)(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—

4(c)(2) (now 725 ILCS 5/114—4(c)(2) (West 1992)) and no indication of diligence shown on the part of the State as the movant for a continuance under section 114—4(e) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 114—4(e) (now 725 ILCS 5/114—4(e) (West)).

The court found that the State had failed to make its proof and had given no explanation for its failure to call a "crucial" witness. The court found the record devoid of evidence showing "that a physician at the hospital emergency room had ordered the test, the reason for the order, or the receipt of the result of the test." The court concluded that it had no choice but to grant defendant's motion to suppress. The court also stated that, since it had been more than a year since the indictment was filed and the State had moved for a continuance on six occasions, the court ordered that there be a hearing on the issue of diligence for purposes of dismissing the indictment. See Ill. Rev. Stat. 1989, ch. 38, par. 114—4(e) (now 725 ILCS 5/114—4(e) (West 1992)).

The State filed a motion to reconsider in which it pointed out that defendant had a subpoena issued to Dr. Strom on September 9 which was served on September 11, 1991. Defense counsel had presented a letter to the court just prior to the hearing indicating that Dr. Strom would not be testifying but would be willing to proceed with an evidentiary deposition. Because the State was aware of the issuance of that subpoena, it had not issued its own subpoena and was unaware that Dr. Strom would not obey the subpoena until immediately before the hearing.

After hearing the arguments of counsel on October 21, 1991, the court commented on the age of the case, there having been a report filed that the cause had been pending over 180 days, and on the delay in the proceedings between January and September 1991. The court emphasized that the matter had previously been continued so that the State could produce Dr. Strom. The court denied the State's motion to reconsider in its order of December 10, 1991, and this appeal followed.

■ We agree with the trial court that defendant's motion is in the nature of a motion *in limine* and sought to exclude evidence on the basis of admissibility rather than to suppress evidence that was illegally obtained. Although the State has failed to show why this order is appealable, we must consider the appealability of the order as it affects our jurisdiction. Though this appeal stems from an order granting defendant's motion to exclude rather than to suppress evidence, the order is appealable under recent cases construing Rule 604(a)(1). Because the substantive effect of the court's order is

equivalent to that of a suppression order and impairs the State's ability to prosecute and the motion was granted before trial, we conclude that the order is appealable. *People v. Keith* (1990), 206 Ill. App. 3d 414, 416-17 (distinction between suppression of evidence and exclusion of evidence no longer relevant in cases involving pretrial motions and rulings where substantive effect of the trial court's order is to suppress evidence), *aff'd* (1992), 148 Ill. 2d 32; *People v. Hatfield* (1987), 161 Ill. App. 3d 401, 406-07.

We now consider whether the trial court erred in granting defendant's motion *in limine* and in denying the State's oral motion for a continuance to produce the testimony of Dr. Strom. A motion *in limine* permits a party to obtain an order before trial excluding inadmissible evidence (*Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 549) or to exclude references to such evidence because its admission would violate some ordinary rule of evidence (*Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189, 195). An order *in limine* has been characterized as a potent weapon because it enables a party prior to trial to limit or prohibit interrogation by the other party, and, because it places these restrictions on the nonmoving party's presentation of its case, it is imperative that the *in limine* order be clear and that all parties accurately understand its parameters. (*Lundell v. Citrano* (1984), 129 Ill. App. 3d 390, 395.) The motion has been treated as analogous to a pretrial motion to suppress evidence in a criminal case. (*Roehrig*, 45 Ill. App. 3d at 194; see also, *e.g.*, *People v. Mueller* (1991), 221 Ill. App. 3d 234 (order granting defendant's "motion to suppress" results of blood-alcohol test under section 11—501.4 affirmed on appeal without discussing distinction between motion to suppress and motion *in limine*); *People v. Reardon* (1991), 212 Ill. App. 3d 44 (similarly, order granting defendant's "motion to suppress" written results of blood-alcohol test under section 11—501.4 affirmed on appeal).

The primary difference between these two motions is that, unlike a motion *in limine*, a motion to suppress evidence is not based upon the ordinary rules of evidence but rather upon the defendant's constitutional rights. Additionally, the making of a pretrial motion to suppress evidence may be necessary for a defendant to preserve his right to object to evidence on a constitutional ground, while it is unnecessary to file a motion *in limine* to preserve his right to object to the evidence on the basis of evidentiary rules. *Roehrig*, 45 Ill. App. 3d at 194-95.

If the rules of evidence do not require the exclusion of the disputed testimony, the trial court must deny the motion; if the evidence should be excluded, however, the trial judge has the discretion to grant or deny the motion. (*People v. Escobar* (1988), 168 Ill. App. 3d 30, 43, citing *People v. Williams* (1978), 60 Ill. App. 3d 529, 533.) If the motion is denied, the movant may still object to the evidence when it is offered at trial. In exercising its discretion, the trial court should balance the prejudice that might be avoided against the complication or inconvenience that might be caused by granting the motion. When the former outweighs the latter, the motion should be granted. (*Roehrig*, 45 Ill. App. 3d at 195.) A court of review will not reverse a trial judge's grant or denial of a motion *in limine* absent a manifest abuse of discretion. (*Escobar*, 168 Ill. App. 3d at 43.) An abuse of discretion occurs only where no reasonable person could take the view adopted by the trial court. *In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 887; see *Mizell v. Passo* (1992), 147 Ill. 2d 420, 425-26.

The State complains that the court determined it had accepted or acquiesced in accepting the burden of going forward on the admissibility of the test results. The State notes that it has not found cases specifically dealing with the allocation of the burden of proof in the situation presented here. We likewise find a paucity of cases explaining the burden of proof as it applies to a (pretrial) motion *in limine*, and we do not have the advantage of an appellee's brief. The general rule is that, during the progress of an action, the movant bears the burden of sustaining the grounds of his motion and the other party is put to the necessity of producing evidence to meet and overweigh or counterbalance that of the moving party. (1S. Gard, Jones on Evidence §5:6, at 539 (6th ed. 1972).) The burdens of pleading and proof have been and should be assigned to the party who generally seeks to change the status quo and who therefore should be expected to bear the risk of failure of proof or persuasion. See E. Cleary, McCormick on Evidence §337, at 786, 788-89 (2d ed. 1972).

In a motion to suppress evidence, the defendant as movant initially bears the burden of proof. (*People v. Rivera* (1992), 233 Ill. App. 3d 69, 73.) In a statutory summary suspension hearing, the burden is on the defendant to present a *prima facie* case that the test result was unreliable. If he does so, the burden then shifts to the State to show that the result was accurate. (*People v. Miller* (1991), 219 Ill. App. 3d 246, 248, citing *People v. Orth* (1988), 124 Ill. 2d 326.) We observe too that, absent the foundational require-

ments of the statutory exception provided by section 11—501.4 of the Code, the results of the blood-alcohol tests taken in the regular course of obtaining emergency medical care would normally be considered information privileged from disclosure. (*People v. Kaiser* (1992), 239 Ill. App. 3d 295, 298.) However, the burden of showing that a privilege bars the introduction of relevant evidence is on the party objecting to the evidence. *Roach v. Springfield Clinic* (1991), 223 Ill. App. 3d 597, 607.

In the present case, we believe that the burden of going forward on the motion *in limine* was initially on defendant—the proponent or party seeking to bar the evidence—to show why the evidence should not be admitted (see *People v. Hood* (1993), 244 Ill. App. 3d 728, 733, citing *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 900; *Mulhern v. Talk of the Town, Inc.* (1985), 138 Ill. App. 3d 829, 833 (burden is on party seeking exclusion of otherwise competent and admissible evidence to adduce facts which clearly bring its case within the rules of exclusion); see also *Troutman v. Valley National Bank* (1992), 170 Ariz. 513, 517, 826 P.2d 810, 813-14 (party had burden of proof in motion *in limine* to show *prima facie* case that testimony in question was barred by statute, and burden of going forward would then shift to opponent)).

■ On the merits, the first question presented is whether defendant made a *prima facie* case that the test result was not admissible. We believe that defendant has presented such a case in showing that the test results were not obtained and used according to the specific foundational requirements established in section 11—501.4 of the Code. The threshold requirements to make the written results admissible are that the test be ordered by a physician on duty at the hospital emergency room and that the test be performed in the regular course of providing emergency medical treatment for the purpose of being used to assist the physician in diagnosis or treatment. Letcher, the laboratory technician who performed the test, testified that she could not remember which doctor was on duty in the emergency room on the evening in question; she did not see any order from a physician ordering the test and did not know specifically who ordered the test performed. While she *assumed* that a test would have to be ordered by a physician, she had no independent recollection of whether Dr. Yunez or Dr. Strom (or any doctor) was involved. The threshold requirement is not met on the basis of this testimony.

Another requirement for admissibility is that the test results be received and considered by the physician for purposes of diagnosis

and treatment. Letcher could not state to whom she had reported the results or whether they were ever reported to the doctor who attended defendant. She had no idea who the treating physician was. Letcher stated that the emergency room paper work did not show that a blood-test was ordered. The failure of a physician to receive and consider the test in diagnosis and treatment renders it inadmissible. *Mueller*, 221 Ill. App. 3d at 237; *Reardon*, 212 Ill. App. 3d at 47.

The State argues that it should have been allowed to obtain a continuance to subpoena Dr. Strom or otherwise obtain his testimony regarding the test procedure that evening. However, as the record shows, the State had made at least two or more attempts to subpoena Dr. Strom and had requested at least two or more continuances to obtain this "crucial" witness to its case. The court noted the delays in the proceedings from January 1991 until September 1991, found insufficient the State's excuse for failing to procure Strom's presence, and found no indication of diligence on the part of the State to support its request for a continuance. At some point prior to the September 13, 1991, hearing, the State apparently chose not to subpoena Strom further, but decided instead to rely on defendant's efforts to secure his presence. In arguing its motion to reconsider, the State expressly conceded that it had decided not to make further attempts to secure Dr. Strom's presence. The court noted that the State made no effort to enforce the subpoena and pointed out that the last continuance sought on July 2, 1991, was specifically requested by the State to obtain the testimony of Dr. Strom. The court also expressed its concern regarding defendant's right to a speedy trial.

Generally, whether to grant or deny a motion for a continuance depends on the facts at the time of the request and is within the sound discretion of the trial court; the diligence shown by the movant is to be considered in exercising that discretion. (*People v. Peruscini* (1989), 188 Ill. App. 3d 803, 806.) A trial court's ruling on a motion for a continuance will not be disturbed on review absent a showing of a clear abuse of discretion. (*People v. Verstat* (1983), 112 Ill. App. 3d 90, 98.) A State's motion for a continuance should be denied where the defendant's right to a speedy trial will be improperly obstructed. (*Verstat*, 112 Ill. App. 3d at 98.) Where it is known that a witness is difficult to bring before the court, the failure to issue a subpoena serves to show a lack of due diligence. *People v. Tillman* (1980), 82 Ill. App. 3d 430, 435.

The record shows that the State obtained at least three continuances for purposes of this motion and, in its prior request for a continuance, had represented to the court that Dr. Strom was a witness crucial to its case; yet the State made no attempt after July 2 to subpoena Dr. Strom. We conclude from the evidence in this record that the State was not diligent in bringing Dr. Strom before the court, and we find no abuse of discretion in the court's denial of the State's last-minute, oral motion for a continuance. The State was well aware that it would need Strom's testimony to present its case.

We also observe that the State failed to make a specific offer of proof as to what Dr. Strom would have testified and we thus have no way of determining the nature and substance of his testimony for an adequate review of the court's ruling. See *People v. Cobb* (1989), 186 Ill. App. 3d 898, 905.

Since defendant's *prima facie* case remains unrebutted and the State was not diligent in producing its own witness, we find no reversible error in the court's rulings.

The judgment of the circuit court is affirmed.

Affirmed.

QUETSCH and COLWELL, JJ., concur.