(No. 32776.—

UNION ELECTRIC POWER COMPANY, Appellee, *vs.* EUGENE SAUGET *et al.*, Appellants.

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

TURNER, HOLDER & ACKERMANN, of Belleville, for appellants.

POPE & DRIEMEYER, of East St. Louis, for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from a judgment of the county court of St. Clair County in a condemnation proceeding instituted by the petitioner, Union Electric Power Company, against the defendants, Eugene and Maria Sauget, and Octav and Odelia E. Levin.

On April 24, 1951, the Illinois Commerce Commission granted petitioner a certificate of convenience and necessity to construct, operate and maintain a high-voltage electric transmission line from its plant at Monsanto, in St. Clair County, to a substation near West Frankfort, in Franklin County. On the day named, Eugene and Augusta Sauget owned a thirty-acre tract of land located within the corporate limits of the village of Cahokia, which was used as farm land. Immediately to the east of their land, but outside the village limits, was an eight-acre tract owned by Octav and Odelia Levin which had either been farmed or permitted to lie idle for many years. Petitioner needed 3.51 acres of the Sauget tract for its 125-foot easement strip, and 1.17 acres of the Levin tract. In length, the ease-

ment measured 1186.15 feet across the Sauget tract and 440.5 feet across the Levin tract. The Levin strip was to be utilized for the overhang of cables, which would come no closer to the ground than 42 feet, while on the Sauget land it was also proposed to build a 68-foot steel tower in the middle of the easement strip, which would completely occupy ⅟₂₅ of an acre.

The condemnation petition was filed January 9, 1952, and described the land involved as portions of certain lots in the "Second Subdivision of Cahokia Commons" and in "Levin's Subdivision of the Second Subdivision of Cahokia Commons." Defendants filed answers in which they admitted ownership of the lands described in the petition, and subsequently filed cross petitions in which they alleged that land outside the easement strip would be damaged, and that all of the land in question had been resubdivided and plats thereof placed of record before the petition for condemnation was filed. The evidence later showed that resubdivision plats of the Sauget and Levin properties were recorded on December 5 and 12, 1951, respectively. Defendants alleged that because the lands had been replatted as subdivisions at the time the condemnation petition was filed, their highest and best use was for residential purposes and that damages should be assessed upon that basis.

Engineers and a surveyor, testifying in behalf of petitioner, described the characteristics and location of the electric transmission line and explained that with the exception of the ⅟₂₅ acre occupied by the tower, defendants could use the land within the easement strip for any purpose not inconsistent with the safe operation of the line, although no buildings could be constructed on it. Wesley C. Moss, a real-estate expert called by petitioner, testified that in his opinion the highest and best use for both tracts on the date the petition was filed was for potential subdivision purposes with a present use of farming. Upon cross-examination he stated that on January 9, 1952, the highest and

best use of the tracts was for subdivision purposes. Moss fixed the value of each tract at $750 an acre and stated that the area within the easement strip, excluding the tower site, would, by the erection, operation and maintenance of the line, be depreciated $550 per acre, or a total of $1875 as to the 3.51 acres and $643.50 as to the 1.17 acres owned by the Saugets and the Levins, respectively.

Ralph H. Cohn, another real-estate expert, testifying for petitioner, stated that in his opinion the highest and best use of defendants' land was for farming with a secondary use of potential subdividing. He fixed the value of the Sauget land at $600 to $650 per acre on the date the petition was filed and the value of the Levin land on the same date at $800 per acre. He was of the opinion that petitioner's utilization of its easement strip would cause the Sauget property within the easement strip to be depreciated in value by $1400 to $1750 and that of the Levins, by $468 to $585.

Both Cohn and Moss agreed that the 1300 square feet occupied by the tower on the Sauget property would be rendered valueless for either farming or subdivision purposes.

Witnesses for defendants fixed the value of the lots in their resubdivisions at prices ranging from $10 to $15 per front foot, and testified that all lots within the easement strip would be rendered valueless and those bordering on it would be depreciated 80 per cent in value. When these figures are related to the documentary evidence which shows the lots which will be affected by the easement, the damages to the Sauget and Levin tracts for lots traversed by the easement approximate $7000 and $3500, respectively. Other evidence of defendants referred to sales of lots similarly situated in the area and to the sale of one lot in the Levin resubdivision for $750 to the father-in-law of Levin's daughter, two days before the condemnation petition was filed.

Richard E. Weinel, the surveyor who platted the subdivisions for defendants, testified that he had done preliminary work on the Sauget subdivision in July, 1949, but that he had not been approached by the Levins until May, 1951, with regard to subdividing their land. He told of drawing the plats, and expressed his opinion that the land within the easement strip, except the tower site, would be suitable for farming after the erection of the line. He also produced a plat to show that the Sauget land could be resubdivided in such a manner that only nineteen lots would be affected by the power line. It was his opinion, however, that it would be impossible to replat the Levin property so as to accommodate it to the easement strip. In this connection the court permitted another civil engineer to produce two plats and testify in rebuttal that both tracts of land could be resubdivided in such a manner that they could be accommodated to the easement strip. In admitting this evidence the court stated that there was no duty on defendants to replat, but that the evidence was admissible to rebut portions of defendants' evidence.

Both Moss and Cohn testified in rebuttal that lots outside the easement strip would not be depreciated by the power line, that the filing of a plat of subdivision would not of itself alter the value of the land, and that an increase in value would not come until such time as improvements were put in and the land adapted to residential purposes.

The jury viewed the premises, was shown the center line of the easement strip across both properties and also observed certain "bladed roadways" which had been cut in both tracts with a road grader shortly before the trial. None of the roadways had been surfaced or otherwise improved nor had any other physical steps whatsoever been taken in the development of the subdivisions. The jury returned verdicts fixing the Saugets' compensation at $250 for the land taken for the tower site, $1900 for damage to

the easement strip and $1500 for damage to land outside the strip, a total of $3650. As to the Levin property, the verdicts fixed $762 as the damage to the easement·strip and $430 for damage to land outside the strip, a total of $1192. The court entered judgment for these amounts.

The major premise of most of defendants' numerous assignments of error appears to be that once the resubdivision plats of their properties had been filed of record, it was fatally erroneous to describe the land, whether in the condemnation petition, in the testimony of witnesses, or elsewhere in the proceedings, otherwise than by reference to the new subdivisions. While the situation is unique, defendants' objections are not well founded under the circumstances presented by the record. Insofar as the petition is concerned, all that the law requires in an eminent domain proceeding is a description of the land sufficient to enable a competent surveyor to locate the land sought to be taken. (*Smith* v. *Claussen Park Drainage and Levee Dist.* 229 Ill. 155, 165.) Here, the record leaves no doubt that defendants, their surveyor and other witnesses were able to locate the proposed strip on their land without difficulty.

As to the evidence, which must be viewed in the light that its purpose is to establish just compensation for the land, it has long been the rule that parties to a condemnation proceeding have the right to adopt their own theories as to the best and highest use of the land taken and each may introduce evidence without being bound by the theory of the other. (*Crystal Lake Park Dist.* v. *Consumers Co.* 313 Ill. 395.) Since neither party is bound by the theory of the other, it follows that the court is not limited to admitting evidence which embraces the theory of one party only. We have found no authority, and none has been cited, which holds that the recording of a plat of subdivision ·automatically and absolutely· prohibits any reference to the property involved in terms other than those of the last recorded subdivision. The petition here described the land

as it was described by the Illinois Commerce Commission in authorizing the condemnation proceeding. The facts of resubdivision and the defendants' theories as to value and damages were fully and fairly put before the jury. We agree with petitioner's witnesses that the platting of farm property for a subdivision does not, without more, alter the value of such property. That being so, it cannot be said that a change occurs in the character of admissible evidence relating to value.

Considering both the record and the errors assigned in this court generally, our conclusion is that the petition adequately described the property sought to be taken and that the trial court did not err in permitting the use of that description elsewhere in the proceeding or in admitting evidence which embraced the condemnor's theory as to the value of the property.

Looking to the specific objections made, we find that of the eighteen errors relied upon for reversal by defendants, fifteen go to evidence admitted and excluded and to instructions given the jury. No useful purpose would be served by a detailed recital of each of the alleged errors since most of them rest upon the general contention which has been discussed. We have examined each of them, and we find them to be without merit. In our consideration of condemnation cases, we have held that where testimony as to values is conflicting and the jury, having viewed the premises, returns a verdict within the range of the testimony, the award will not be disturbed unless there is something in the record which shows that the verdict was a clear and palpable mistake or the result of passion and prejudice, or unless there was some erroneous ruling which might have misled the jury. *City of Chicago* v. *Harbecke,* 409 Ill. 425; *Forest Preserve Dist.* v. *Draper,* 387 Ill. 149; *City of Mt. Olive* v. *Braje,* 366 Ill. 132.

In this case the verdict is well within the range of the testimony. Indeed, when the agreed cost of improving the

properties with streets and water and other utilities so that they would be salable for residential purposes, and the agreed cost of marketing the properties so improved is taken into account, the verdict corresponds closely to evidence of value offered on behalf of the defendants. The jury viewed the premises and its view is in the nature of evidence. (*Illinois Iowa Power Co.* v. *Guest,* 370 Ill. 160; *South Park Comrs.* v. *Livingston,* 344 Ill. 368.) We find no reason to disturb the verdict.

An additional contention made by defendants is that the court erred in denying their motion for a mistrial based upon the ground that petitioner should not have been permitted, over objection, to amend its petition after the jury had been sworn and while witnesses were being examined. The amendment complained of broadened a stipulation contained in the petition as to the measure of future damages for which petitioner would hold itself liable. Before trial, defendants had endeavored to have the same paragraph of the complaint stricken because it did not provide for the elements of damage which the later amendment embraced. Their present complaint against the amendment that it took them by surprise and materially changed the defense is without any basis in the record. An element of damage anticipated by a pretrial motion can hardly be said to come as a surprise. Our statute regulating eminent domain proceedings permits amendments to the petition, "whenever necessary to a fair trial and final determination to the question involved." (Ill. Rev. Stat. 1951, chap. 47, par. 5.) The trial court did not err in permitting the amendment or in denying the motion for mistrial.

A consideration of all the facts and circumstances compels the conclusion that defendants received a full and fair hearing upon the question of the damages to their property. The judgment of the county court of St. Clair County is affirmed.

*Judgment affirmed.*