Cheshire,
No. 5419.

## O. K. Fairbanks Company

*v.*

### State.

Argued April 5, 1967.
Decided October 6, 1967.

*Goodnow, Arwe & Ayer* and *Sheehan, Phinney, Bass & Green* · ( *Mr. William L. Phinney* orally ), for the plaintiff.

*George S. Pappagianis,* Attorney General, and *Robert W. Moran,* Assistant Attorney General ( *Mr. Moran* orally ), for the State.

LAMPRON, J.   In April 1953, the plaintiff purchased for $54,000 the land known as the Holbrook property situate on the south side of West Street in Keene. This parcel had about 900 feet of frontage along West Street, an average depth of 300 feet, and contained about 270,000 square feet. There was no structure on this land at that time. However, in 1958 plaintiff erected thereon at a cost of $236,000 a supermarket which it operated. In May 1961, plaintiff acquired an adjoining parcel of land of about 266,000 square feet in back of or south of the parcel purchased in 1953 thus bringing its total holdings to about 536,000 square feet.

On April 5, 1962 the State took by eminent domain about

76,000 square feet off the west side of the parcel first bought. The parcel taken had a frontage of 400 feet along West Street thus reducing the street frontage of this lot to 500 feet. There were no structures or improvements on the land taken by the State. It was "raw land" most of which was below street level, some of it as far below as four to five feet.

All the expert witnesses, two produced by the plaintiff and one by the State, agreed that the most advantageous and profitable use to which plaintiff's property could be placed on the day it was condemned was commercial use as a shopping center. Plaintiff was therefore entitled to have his property appraised for that use. *Amoskeag-Lawrence Mills* v. *State,* 101 N. H. 392, 396; *Roy* v. *State,* 104 N. H. 513, 516-517. The Trial Court also properly instructed the jury that the plaintiff was entitled to recover as damages for the taking the difference between the fair market value of its whole property on the day of the taking and the fair market value of what was left after the taking. *Clancy* v. *State,* 104 N. H. 314, 316. In arriving at the amount of plaintiff's damages, the jury was to consider not only what might be the fair value of the property taken but also its effect, if any, on the entire property of the plaintiff, or severance damage. *Edgcomb Steel Co.* v. *State,* 100 N. H. 480, 486-487; *Amoskeag-Lawrence Mills* v. *State,* 101 N. H. 392, 400.

The two expert witnesses produced by the plaintiff both testified that in their opinion the fair market value of plaintiff's property before the taking was $650,000. Witness Tennian fixed the value of the property left to the plaintiff after the taking at $475,000 thus placing the amount of plaintiff's damage at $175,000. He testified that this amount was made up as follows: $76,000 as the value of the 76,000 square feet of land actually taken by the State and $99,000 which is the "severance damage — the damage that was done because this was taken." Witness Jenkins testified that in his opinion the fair market value of what property was left to the Fairbanks after the taking was $450,000 making plaintiff's damages $200,000. He assigned $76,000 of this sum as the value of the parcel taken and the balance of $124,000 is the severance damage which the witness defined as "the diminution in value of what remains of a property after a part of it has been taken."

It is evident that in the opinion of these two witnesses an important element of plaintiff's damages was the effect of the loss

of the land taken on the use of its remaining property. Tennian testified that "the remainder can't be utilized as well as it originally could have been" as a shopping center. Jenkins testified that the taking would make it "a great deal more difficult getting the income out of it [as a shopping center] which would justify the value of the land." The use of the remaining land as a shopping center "was very curtailed."

Witness Ratti who testified on behalf of the State gave as his opinion that the value of plaintiff's whole property immediately before the taking was $375,000. He also testified that the fair market value of the whole property remaining to plaintiff after the taking was $343,000. He estimated plaintiff's damage caused by the taking at $32,000 which was revised to $33,600 because of a change in the figures on the amount of land taken given to him after his original computation. He also testified that "after making an analysis of the taking and the effect it had on the remainder, my conclusions were that the functional use of the remaining land was as good after the taking as it was before. My conclusion was that there was no severance damage to the remainder and that consequently the supermarket and the land that was remaining had the same functional use and value that it had before, except in the amount that was involved in the taking by the State."

This shows that Ratti's value of about 45 cents a square foot on the 76,000 square feet of land taken was the plaintiff's only damage in his opinion. There was evidence that in 1960 about a year and a half before the taking of the Fairbanks land on April 5, 1962, a 50,000 square foot parcel of land now used as a filling station, was sold for $25,000 or 50 cents a square foot. This land is located directly across the street from plaintiff's property. There was also evidence that there has been no change caused by the taking in the entrance to plaintiff's market and that the same parking facilities were available after as existed before. There was also evidence that in 1958 when plaintiff erected its supermarket it was placed in such a position on the lot that an original plan for a shopping center obtained shortly after purchase in 1953 could not have been effectuated thereafter. It is also admitted that the parcel of land taken by the State had no structures on it.

The jury took a view of the premises in question. The knowledge and information gained thereby could constitute evidence

to be considered by them in connection with the other evidence in the case in arriving at the amount of damages caused to the plaintiff. *Chouinard* v. *Shaw,* 99 N. H. 26, 28; 27 Am. Jur. 2d, Eminent Domain, *s.* 415, *p.* 301; Annot. 1 A.L.R. 3d 1397, 1400. The opinions of the experts as to plaintiff's damage need not be blindly followed by the jury but are to be weighed by them and judged in view of all the evidence in the case. 27 Am. Jur. 2d, Eminent Domain, *s.* 425, *p.* 317. A jury can accept the testimony of the expert offered by one party and reject that of the experts offered by the other. *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 586. It was for the jury to decide how much of the evidence to accept or reject. *Pepin* v. *Beaulieu,* 102 N. H. 84, 88.

The verdict of $38,500 returned by the jury was within the range of the testimony. *Interstate Bridge Authority* v. *Ham Estate,* 92 N. H. 277, 282; 27 Am. Jur. 2d, Eminent Domain, *s.* 471, *p.* 397. By denying plaintiff's motion to set aside the verdict the Justice who presided at the trial and saw and heard the witnesses found that the weight of the evidence was not such as to make it apparent that the jury failed to consider the evidence intelligently or properly, or that it was misled, or that its verdict was inadequate. We cannot say as a matter of law that this conclusion by the Trial Court was unreasonable. *Jolicoeur* v. *Conrad,* 106 N. H. 496, 500; *Lavoie* v. *Blake,* 106 N. H. 347, 349.

Near the close of the evidence, plaintiff asked State's witness Ratti on re-cross-examination if he knew that the State had another appraiser, named Sullivan, review the damage resulting from this taking. Ratti answered in the negative and plaintiff presented testimony that "a gentlemen from Boston named Sullivan" had represented to one of the owner's of the plaintiff company that he was making an appraisal for the State. At the hearing on the motion to set aside the verdict it was acknowledged by counsel for the State that it had an appraisal report which was not introduced in evidence. Plaintiff argues that the State's suppression of this appraisal vitiated the proceedings, misled the jury on the issue of fair market value and constituted reversible error.

The establishment of the procedure to be followed in eminent domain cases has long been recognized as a prerogative of the Legislature subject only to the constitutional requirements of due process. *Port of N. Y. Authority* v. *Heming,* 34 N. J. 144, 154;

*Interstate Cemetery Co. Appeal,* 422 Pa. 594, 598; *Green Street Association* v. *Daley,* 373 F. 2d 1, 6. Due process is satisfied if the proceedings for ascertainment of the amount of compensation to be paid to the owner are conducted in some fair and just manner with reasonable notice to him and reasonable opportunity to be heard and to present his claim. *Dummer &c. Co.* v. *Company,* 81 N. H. 213, 215; *Dohany* v. *Rogers,* 281 U. S. 362, 369. Within those limitations no particular form or mode of action is required. *Port of N. Y. Authority* v. *Heming,* 34 N. J. 144, 155.

Our Legislature has provided for the manner of appeal and the proceedings therefor in RSA ch. 233. There is no indication in this statute, expressed or implied, that the proceedings or appeal were intended to be other than the usual adversary proceedings between parties. We find nothing in the statute to indicate that the Legislature intended to place on the State any burden to produce evidence which a party in the usual adversary action would not be compelled to offer. *Oklahoma City* v. *Cooper,* 420 P. 2d 508, 512 (Okla. 1966); *In re FAI-75 Expressway in Detroit,* 4 Mich. App. 496. See *Hammond* v. *State Roads Commission,* 241 Md. 514, 517. Consequently the State was under no duty to offer the appraisal or call the appraiser as a witness at the trial and was at liberty to pursue that course if deemed in the best interest of the public which is also entitled to have the damages assessed in a just manner. 27 Am. Jur. 2d, Eminent Domain, *s.* 266, *p.* 53.

It follows that discovery of this appraisal after trial would serve no useful purpose and the Trial Court properly denied plaintiff's motion for its production. *Amoskeag-Lawrence Co.* v. *State,* 101 N. H. 101, 103.

*Exceptions overruled.*

All concurred.