COMMONWEALTH EDISON COMPANY, Petitioner-Appellee, *v.* HERMAN
F. DANEKAS *et al.*, Defendants-Appellants.

Second District No. 81-436

Original opinion filed February 11, 1982.—Rehearing allowed February 23,
1982.—Revised opinion filed April 13, 1982.

Edward T. Graham, of Glen Ellyn, for appellants.

Law Offices of John W. Countryman, of De Kalb, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:
In this action by Commonwealth Edison Company under the Illinois

Eminent Domain Act (Ill. Rev. Stat. 1979, ch. 47, par. 1 *et seq.*) to acquire perpetual easement rights in certain portions of a farm owned by Herman and Dora Danekas and to determine just compensation to be paid to defendants for such rights, a jury verdict was returned in the amount of $50,000 for the easement. A special verdict found no damage to the remainder. Defendant property owners appeal the judgment entered on this verdict.

On August 13, 1979, Commonwealth Edison Company (hereinafter Edison) filed a petition which in substance sought to condemn a perpetual easement in, on, over, along, across and through defendants' property with rights of ingress and egress for the construction, operation and maintenance of a 345,000 volt (345 kv) electric transmission line together with any appurtenances and facilities necessary for the operation and maintenance thereof.

Edison had previously acquired a 150-foot-wide by 6,500-foot-long easement (hereinafter original easement) for a single electric transmission line, with five electric transmission towers, in 1972. The petition in the instant case was for the acquisition of an additional 100-foot width of easement adjoining the original easement along its northerly boundary. Edison's exhibit B shows that the original easement and the additional easement at issue in the instant case comprise a 250-foot-wide band traversing part of a 681-acre farm owned by defendants Herman and Dora Danekas (hereinafter Danekas).

On September 26, 1979, Danekas filed a cross-petition alleging damage to the remainder of the property as a result of the taking and requesting assessment of damages to the remainder in the same proceedings.

Edison's authority to acquire the easement was not contested in the proceedings; however, the issue of just compensation was contested. The jury award of $50,000 for the easement rights was very near the maximum estimate of damages offered at trial. These estimates ranged from Edison's witnesses' low estimate of $22,735 with no damage to the remainder to Danekas' witnesses' high estimate of $56,000 with damage to the remainder in the amount of $246,000.

On July 12, 1978, which was prior to Edison's filing its condemnation petition in the instant case, the Illinois Commerce Commission had granted Edison a certificate of convenience and necessity for construction, operation and maintenance of a 345 kv electric transmission line and related facilities and repairs. Edison's trial exhibits all show Edison's plan to construct a single electric transmission line, with eight single-shafted pole structures located approximately 900 feet apart. No wires would be closer than 29 feet above ground level. Edison's evaluation witnesses based their evaluations on the limited use of the easement for a single electric transmission line, and each of these witnesses concluded

that the remainder of the Danekas property was not damaged by the taking on the basis that the easement was limited to a single electric transmission line. In his opening statement and in his closing argument to the jury, Edison's trial counsel verbally assured the jury that the easement would be limited to a single electric transmission line with eight ground structures.

Thirty-eight photographs showing the land and the existing transmission line easement a few months before trial were introduced into evidence at trial, and a photo of the single-shaft structure was also admitted. Also Edison's exhibits A and B, a large aerial photo and a large plat showing the original easement strip as well as the new 100-foot proposed easement strip adjacent to the old easement, were shown to the jury. All of these items were allowed in the jury room during deliberations.

At the close of its case, Edison was permitted to read to the jury a "Unilateral Stipulation" in which Edison agreed to remain within the boundaries of its easement at all times, to restore the easement area after disturbance by Edison and to pay for any present and future crop damage as a result of Edison's activities upon the easement.

After instructions, the jury deliberated and returned its verdict in the amount of $50,000 compensation for the new easement strip and found no damage to the remainder. Additionally, the jury answered a special interrogatory on the issue of damages to the remainder, the land outside the strip. The special findings were consistent with the general verdict.

The trial court entered a final judgment order granting Edison a perpetual easement in, on, over, along, across, and through the tract of land in question along with the right of ingress and egress therefrom "for the construction, operation and maintenance of a 345 kv electrical transmission line together with such additions, extensions, repairs, renewals, or improvements to changes and such electrical transmission lines which are, or may become, reasonably necessary," the right to assign Edison's easement rights to other authorized public utilities where "required by public convenience and necessity" and the authority to enter on the easement and use the property in accordance with the easement rights set out in the condemnation petition and the judgment order.

On appeal, Danekas asserts that the issue of just compensation for damage to the remainder was not properly put before the jury. Defendants claim that Edison acquired very broad and extensive easement rights, while the evidence put to the jury and the relevant instructions all concerned a much narrower and more limited easement. Therefore, Danekas requests this court to reverse the judgment and remand the cause to the lower court on the issue of just compensation.

■■ Danekas first alleges that the trial court erred in allowing Edison's evidence at trial because that evidence was at variance with the easement

rights set forth in the petition for condemnation. Specifically, they contend that Edison received broadly described easement rights which were not limited to a single electric transmission line, while Edison's evidence led the jury to believe that the easement was limited to a single line. Clearly, as Danekas asserts, a landowner is entitled to recover all of his damages caused by the taking of land from him by condemnation as well as that which may arise on account of construction and future operation by the condemnor upon the land taken. (*McReynolds v. City of West Frankfort* (1954), 3 Ill. App. 2d 406, 409-10.) It is Danekas' position that Edison's use of the broad easement granted was not limited to the initial proposed use and that the compensation awarded was, therefore, insufficient.

■■ After reviewing the trial record and reading Edison's petition for condemnation as a whole, it is clear that the easement sought was for the construction, operation and maintenance of a single 345 kv electric transmission line. Edison's trial counsel consistently stated that they sought this limited easement. Although not required to do so, especially in the absence of a request by the property holder, Edison did present plans covering the proposed structure(s) to be erected on the property sought to be taken. (*Sanitary District v. Johnson* (1931), 343 Ill. 11, 16.) The testimony of Edison's witnesses under oath that these plans represented the use to be made constituted a binding limitation upon the easement taken. 343 Ill. 11, 16.

However, language contained in the decretal portion of the judgment order, to wit: "together with such additions, extensions, repairs, renewals and improvements to changes and such electrical transmission lines which are, or may become, reasonably necessary," can be fairly construed to grant a broader easement than that sought by petitioner or put before the jury. To the extent that such language is overly broad, it must be modified so that the easemnt granted is clearly limited to that shown by the evidence.

■■ Second, defendant landowners Danekas argue that the trial court erred in refusing to permit them to proceed first at all stages of the trial. Where a condemnee claims damage to the remainder, it is his burden to introduce competent evidence of a reduction in value and to persuade the jury that there has, in fact, been a reduction in value of the remainder. (*City of Chicago v. Provus* (1953), 415 Ill. 618, 623.) Because they had the burden of proof on this issue, Danekas claim that they had the right to open and close and that it was not within the discretion of the court to limit or deny that right. *Liptak v. Security Benefit Association* (1932), 350 Ill. 614, 618.

■■ Edison correctly responds to this argument by stating that the condemnees' right to proceed first in an eminent domain proceeding is not

absolute and requires affirmative action on the condemnees' part, which was not present in the instant case. The Illinois Supreme Court has said that a landowner who files a cross-petition for damages to the remainder and desires to proceed first at all stages of the trial may file a timely motion to this effect prior to trial, or the court, in exercise of sound judicial discretion, may order him to so proceed. (*Department of Business & Economic Development v. Brummel* (1972), 52 Ill. 2d 538, 543.) *Brummel* also notes the prejudice inherent in an unexpected switch in role which the party was required to play in that case.

■■ In the instant case, Danekas filed no motion for leave to proceed first in opening and closing at all stages of the proceeding until the date of trial. The court denied the motion as untimely because it was made after the cut off date for pretrial motions and because it would be unfair at that time to permit Danekas to do so. Although appellant Danekas claims that Edison would not have been prejudiced by the condemnees' proceeding first, that is not so. As Edison's trial counsel states, they were prepared to proceed first and taken by surprise by Danekas' motion and had the witnesses ready and available for this first day of trial. The trial court properly denied Danekas' oral motion immediately prior to the commencement of *voir dire* as untimely.

Third, Danekas contends that the trial court erred in refusing to permit trial counsel to be on the bus which transported the jurors to the subject property. Illinois statutes provide for a jury view of the premises in a condemnation proceeding at the request of either party (Ill. Rev. Stat. 1979, ch. 47, par. 9), and such a view did take place in this case although it is not clear whether the view was at the request of one of the parties or on the court's own motion. Neither counsel made any objection to either the route to be taken or the stops to be made when these matters were discussed by counsel for both sides and the trial judge. The court informed counsel that they could ride with the deputy and get out and point out boundaries and other factors when the bus stopped. Danekas' counsel requested to also be present on the bus stating:

> "MR. GRAHAM [defense counsel]: No, I don't want to point or talk. I just want to be in their presence from the time they leave the building until the time they return.
>
> \* \* \*
>
> MR. GRAHAM: \* \* \* I've had too many occasions when bus drivers make comments about what they observe enroute and I've had too many occasions when it's been reported back matrons and bailiffs made comments and I prefer to be present at all times with the jury when there are bailiffs, bus drivers and other people present."

The court agreed to properly admonish the jury, the bus driver, bailiffs and matrons, and the trial court denied Danekas' counsel's request.

■■ The cases cited by Danekas in support of the alleged right to be present on the bus do state that the jury view of the premises is in the nature of evidence in an eminent domain proceeding (*Sanitary District v. Johnson* (1931), 343 Ill. 11, 17), but neither the cases cited nor the statutes require that counsel be present during traveling time. Also, Danekas has failed to show that any prejudice or error occurred as a result of the inability of counsel to be on the bus. The trial court properly refused Danekas' request.

Fourth, defendant landowners argue that the trial court erred in excluding evidence of the unsightliness of the proposed electric towers and the expense of farming around the towers after the easement was taken.

■■ According to Illinois law, unsightliness is an improper element of damages. (*Illinois Power Co. v. Wieland* (1927), 324 Ill. 411, 414-15; *Illinois Power & Light Corp. v. Peterson* (1926), 322 Ill. 342.) Though *Board of Trade Telegraph Co. v. Darst* (1901), 192 Ill. 47, 50, cited by Danekas, does stand for the proposition that unsightliness is a proper element of damage, this language is characterized as dicta and criticized as being out of harmony with both previous and subsequent decisions of the court in *Illinois Power Co. v. Wieland* (1927), 324 Ill. 411, 414-15. The other cases cited by Danekas in support of his position concern a limited exception to the general rule; this exception allows unsightliness as a proper element where there is evidence that the highest and best use of the remainder is for home sites. (*Central Illinois Public Service Co. v. Westervelt* (1977), 67 Ill. 2d 207, 211-12, *cert. denied* (1978), 434 U.S. 1070, 55 L. Ed. 2d 772, 98 S. Ct. 1252; *Sanitary District v. Baumbach* (1915), 270 Ill. 128, 133-34.) Because there is no evidence in the instant case that the highest and best use of the subject property was for residential purposes, this narrow exception is inapplicable. The court properly excluded evidence of unsightliness of the towers as an element of damage.

■■ Danekas next contends that inconvenience in farming because of the obstruction caused by the existence of the towers on the ground is a proper element of damages. (*Central Illinois Public Service Co. v. Lee* (1951), 409 Ill. 19, 25; *Illinois Iowa Power Co. v. Rhein* (1938), 369 Ill. 584, 593-94; *Illinois Power & Light Corp. v. Barnett* (1930), 338 Ill. 499, 502; *Illinois Power & Light Corp. v. Talbott* (1926), 321 Ill. 538, 551.) It is Danekas' theory that evidence of the expense of farming should have been admitted because it bears on the price that a willing buyer will pay for an operating grain farm. However, the issue at hand in these proceedings was whether or not the market value of the property was diminished by the imposition of the easement (*Illinois Power & Light Corp. v. Talbott* (1926), 321 Ill. 538, 544-45, 551), and the questions as posed by Danekas' trial counsel related to the cost of farming rather than the depreciation or diminution in value of the remainder for farm purposes. When defendant Herman Danekas testified as an evaluation witness, he

was allowed to state that the presence of the towers was taken into consideration in fixing a value on the depreciation of the property. The court correctly allowed consideration of the cost of farming in the presence of the proposed towers when that consideration was properly phrased as an element in diminution of value of the remainder and correctly excluded its consideration where testimony on that issue was not related to the question of depreciation of the land not taken.

Danekas next argues that the trial court committed reversible error in denying defendant Herman Danekas the right to consult with his trial counsel during part of the trial. During the course of Herman Danekas' direct testimony as a valuation witness, the court called a brief lunch recess and granted Edison's request that Herman Danekas not discuss the testimony with his counsel over lunch. In the cases cited by Danekas, the right to consult with an attorney before and during the trial is an inherent part of the right to counsel and cannot be denied by the trial court in criminal trials. "[T]he right of a party to counsel in a civil case is quite divergent from the right of defendant in a criminal prosecution." (*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 647.) The *Stocker* court is quick to point out "that the trial court [does not have] unlimited rights in this type of situation in a civil case [and that] [t]here may possibly be circumstances in civil cases in which extreme orders by a trial court regarding communication between lawyer and client would result in prejudicial error." 61 Ill. App. 3d 636, 647.

■■ Just as the *Stocker* court found no prejudice in that case, counsel for the appellant in the instant case has not shown any prejudice resulting from the court's ruling. Danekas has not pointed out any instance in which the ruling of the court forbidding consultation between Herman Danekas and his attorney during the lunch recess in any way hampered counsel from fully discharging his duties toward his client. (*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 648.) Therefore, we find that the court's imposition of a limitation on Herman Danekas' right to consult with his attorney does not constitute reversible error.

■■ Danekas next asserts that the trial court erred in refusing to allow evidence of the sale of similar property. The testimony of defendants' evaluation witness, a farm auctioneer, was allowed insofar as it tended to establish the witnesses' qualifications by showing that he had been the auctioneer at the sale. However, evidence as to price was not admitted. On appeal, Edison contends that Danekas failed to establish the proper foundation as to the properties' similarities with the subject property. Regarding the subject of admission of this type of evidence, the Illinois Supreme Court has said:

"To aid in establishing * * * value, this court has consistently held

that evidence of voluntary sales of similar parcels occurring in the same vicinity at or about the time of filing are admissible unless such proof causes a confusion of issues which offsets the benefits to be derived therefrom. [Citations.] No general rule can be laid down regarding the degree of similarity which must exist between property sold and that condemned in order to make evidence of such sale proper. Since no two pieces of real estate are exactly alike and since economic influences are constantly changing, the admission of such proof rests largely in the discretion of the trial court, and its decision will be reversed only where such discretion has been clearly abused. [Citations.]" (*City of Chicago v. Blanton* (1958), 15 Ill. 2d 198, 202-03.)

The only information about the purportedly similar property was that it was within another county, that there were two 160-acre and one 80-acre parcels sold and that the whole 400 acres had been used as a grain farm at the time the auction was held. Defendant made no additional offer of proof to further establish similarity. On the basis of the information before the court at the time of the ruling in question, the court did not abuse its discretion in excluding the evidence.

■■ Danekas' next area of objection concerns the "Unilateral Stipulation" which Edison read to the jury during the trial. By the terms of that stipulation Edison agreed to restrict its entry on the property to easement purposes, to restore the easement area after disturbance and to pay for present and future crop damage. At the close of the trial, the court gave Illinois Pattern Jury Instructions, Civil, No. 300.52 (2d ed. 1971) (hereinafter cited as IPI Civil) over defendants' objections:

> "The stipulation made by the plaintiff and read to you is a binding obligation which Commonwealth Edison Company must perform. You are not to allow damages because of any possibility that the stipulation might not be performed."

Defendants claim that the stipulation concerned damages which were not proper subject matter for jury consideration and served only to confuse the jury concerning the issue of damages. Additionally, they maintain, the court failed to cure this confusion by refusing to give defendants' instruction No. 21, which informed the jury that the damages referred to in the "Unilateral Stipulation" did not include any damages to the remainder caused by the present or future use of the easement by Edison.

■■ Edison is entitled to file a stipulation in open court in condemnation proceedings in which it agreed to do certain things which limit its use and reduce property damage, and it is bound by such stipulation. (*Midwestern Gas Transmission Co. v. Mason* (1964), 31 Ill. 2d 340, 343, *appeal dismissed, cert. denied* (1965), 380 U.S. 124, 13 L. Ed. 2d 792, 85 S. Ct. 806; *East Peoria Sanitary District v. Toledo Peoria & Western R.R.* (1933),

353 Ill. 296, 305.) The language of the stipulation itself is clear, and it lacks any potential to confuse the jury on the issue of damages. The issue of damages, both as to the property taken and to the remainder, were properly put before the jury. Danekas' instruction No. 21, which the court refused, contains the same principles basically contained in other instructions given, and the instructions given correctly state the law so that the trial court properly refused the tendered instruction. *City of Chicago v. Provus* (1953), 415 Ill. 618, 625.

Danekas' last objection also concerns jury instructions. The basis of his objection is that several instructions, given over defendants' objection, instructed that the word "easement" as used by the court in the proceedings meant the right to use the Danekas property for a "particular purpose" (*e.g.*, IPI Civil No. 300.87), that is, for a single electric transmission line. As discussed previously, defendants Danekas maintain that this limitation was contrary to the petition for condemnation and totally inconsistent with the final judgment order, which, defendant landowners maintain, called for and granted a much broader easement. We have determined that Edison sought to acquire no more than an easement for a 345 kv electric transmission line, and the judgment order as we propose to modify it will so limit the easement. Defendants' assignment of error regarding instructions concerning the limited easement must therefore be rejected.

The jury in the instant case found the compensation for the easement strip actually taken to be near the maximum of the range offered by defendant landowners' witnesses, while they agreed with Edison's contention that no damage to the remainder resulted by imposing an additional easement abutting the existing easement. Discussing damage awards in condemnation cases, the Illinois Supreme Court has said:

> "In our consideration of condemnation cases, we have held that where testimony as to values is conflicting and the jury, having viewed the premises, returns a verdict within the range of the testimony, the award will not be disturbed unless there is something in the record which shows that the verdict was a clear and palpable mistake or the result of passion and prejudice, or unless there was some erroneous ruling which might have misled the jury. [Citations.]" *Union Electric Power Co. v. Sauget* (1953), 1 Ill. 2d 125, 131. Accord, *City of Chicago v. Provus* (1953), 415 Ill. 618, 623.

The jury in this case awarded compensation for the construction, operation and maintenance of a 345 kv electric transmission line, and that award is supported by the record. As we have stated earlier in this opinion, the language of the decretal portion of the judgment order is overly broad and must, therefore, be clarified and made more restrictive. The decretal portion of the judgment order of the trial court entered December 31, 1980, is, therefore, modified to read as follows:

IT IS THEREFORE ORDERED that upon payment by the

Petitioner to the County Treasurer of Ogle County, pursuant to Ill. Rev. Stat. Ch. 47, Sec. 14 (1979), within sixty (60) days of the date of entry of this Judgment Order of the sum of Fifty Thousand and no/100 ($50,000.00) Dollars previously adjudged to be full just compensation for the imposition of the easement rights on the premises legally described as:

A strip of land 100 feet in width lying Northwesterly of and adjoining the Northwesterly line of the Commonwealth Edison Company right-of-way in the North half of Section 21, Township 42 North, Range 1 East of the Third Principal Meridian, Ogle County, Illinois, as said right-of-way is described in a certain grant dated July 20, 1967 and recorded August 3, 1967 in the office of the Recorder of Ogle County, Illinois, as Document No. 385778.

ALSO

A strip of land 100 feet in width lying Northwesterly of and adjoining the Northwesterly line of the Commonwealth Edison Company right-of-way in the Southwest Quarter of Section 15 and the Northwest Quarter of Section 22, as said right-of-way is described in a certain grant dated July 25, 1968 in the Recorder's Office of Ogle county, Illinois, as Document No. 392236, all in Township 42 North, Range 1 East of the Third Principal Meridian, Ogle County, Illinois, the Petitioner, Commonwealth Edison Company, an Illinois corporation, shall thereupon be vested with a perpetual easement in, on, over, along, across and through the tract of land heretofore described as the easement strip in this Judgment Order with the right of ingress thereto and egress therefrom, free and clear of all liens, judgments and claims of every kind and character for the construction of a 345 kv electric transmission line and any appurtenances and facilities necessary for its operation and maintenance as shown by the proofs herein, together with the right to operate and maintain the same, and that said perpetual easement be assignable by the Petitioner to other authorized public utilities in such manner as may from time to time be required by public convenience and necessity and thereupon, said Petitioner, Commonwealth Edison Company, shall be authorized and empowered to enter upon the aforedescribed easement and to use said property in accordance with the easement rights granted herein.

As modified herein, the judgment order of the trial court entered December 31, 1980, is affirmed.

Affirmed as modified.

SEIDENFELD, P. J., and LINDBERG, J., concur.