UNITED STATES of America, Plaintiff,

v.

Eduardo SUAREZ, Defendant.

No. CR 92–036 AWT.

United States District Court,
D. Guam.

Feb. 1, 1994.

Frederick A. Black, U.S. Atty., Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff.

Howard Trapp, Howard Trapp Inc., Agana, Guam, for defendant.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge, sitting by designation.

Defendant was convicted, after trial by jury, of a violation of the Clean Water Act, for having illegally discharged fill material into wetlands without a permit. 33 U.S.C. §§ 1311(a), 1319(c)(2)(A). He has now moved under 28 U.S.C. § 2255 to set aside his conviction and sentence.[1] The motion has heretofore been briefed and submitted for decision. Neither party contends that an evidentiary hearing is needed to resolve any matter in issue on the motion.

Defendant makes only a single contention on this motion—that his retained counsel ineffectively represented him with respect to a single, particular issue in the case.

■ Defendant contends that the Clean Water Act applies only to wetlands which are interstate in character, those whose degradation could affect interstate or foreign commerce and those adjacent to waters of the United States, citing 33 C.F.R. § 328.3(a)(2), (3) & (7) (Corps of Engineers definition of

---

1. On appeal by the government, defendant's sentence was recently vacated and the case remanded for resentencing. *United States v. Suarez*, 15 F.3d 1094 Memo. (9th Cir.1994). However, this does not moot the motion because the conviction stands and defendant is subject to resentencing.

"waters of the United States"); 40 C.F.R. § 230.3(s)(2), (3) & (7) (EPA definition of "waters of the United States").[2] He further contends that when the government had completed presentation of its case in chief, the evidence was insufficient to sustain a conviction, *i.e.*, an acquittal would have been required, because there was no evidence that the land in issue was "wetlands" within the meaning of the Clean Water Act.

However, on cross-examination of the government's chief witness, *defense counsel* elicited that the subject property was adjacent to the Agana River. This, in turn, opened the door for government counsel, on redirect, firmly to establish that the wetlands in question were covered by the Clean Water Act. Thus the issue is whether counsel did and, if so, whether it was incompetent for counsel to have, by his questioning on cross-examination, opened the door for the government to avoid an acquittal by adducing evidence that the parcel in issue was adjacent to the Agana River.

The standard governing claims of ineffective assistance of counsel is well-established. Defendant must establish, first, that his counsel's performance fell below an objective standard of reasonable competence, and, second, that such deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984).

First, the court must examine the legal basis for defendant's claim—that the Clean Water Act does not apply to "isolated" wetlands. There is no binding Ninth Circuit authority on this issue. The government contends that the "comments" in *Leslie Salt Co. v. United States*, 896 F.2d 354 (9th Cir. 1990), indicate that "waters of the United States" include isolated wetlands. However,

that case did not involve the issue of "isolated" wetlands;[3] consequently, neither its holding nor its discussion is particularly helpful here.

In *Hoffman Homes, Inc. v. Administrator, U.S.E.P.A.*, 999 F.2d 256 (7th Cir.1993), the court, in a well-reasoned opinion, held that the Clean Water Act did not apply to isolated wetlands which had no nexus with waters of the United States or to interstate commerce.[4] Under *Hoffman Homes*, the government would have the burden of proving that the wetlands defendant was charged with filling were wetlands within the coverage of the Clean Water Act, *i.e.*, not isolated wetlands. *Cf. Exxon Corp. v. Train*, 554 F.2d 1310 (5th Cir.1977) (Clean Water Act does not cover discharges into non-tributary groundwater).

As can be seen, this is an unsettled area of the law. Judge Rymer observed in *Leslie Salt* that, "whether the Clean Water Act extends Corps' jurisdiction to waters that are not 'adjacent to bodies of open water'" is an open question. 896 F.2d at 361 (Rymer, J., concurring) (footnote omitted). And the Supreme Court has declined to rule on "the question of the authority of the Corps to regulate discharges of fill material into wetlands that are not adjacent to bodies of open water...." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131–32 n. 8, 106 S.Ct. 455, 461–62 n. 8, 88 L.Ed.2d 419 (1985).

Given this uncertain state of the law in a complex legal area, coupled with the fact that criminal prosecutions under the Clean Water Act are relatively rare, and assuming that the Clean Water Act does not apply to "isolated" wetlands,[5] the court concludes that, counsel's failure to preserve the issue of the applicability of the Clean Water Act to "iso-

**2.** As discussed below, the government contests this interpretation of the Act. According to the government, "Defendant errs in his basic premise, because the Clean Water Act does apply to isolated wetlands."

**3.** In fact, one of the jurisdictional theories of the Army Corps of Engineers was that the parcel in question was "adjacent" wetlands. 896 F.2d at 356 & n. 5.

**4.** Defendant relied on an earlier opinion in *Hoffman Homes*, 961 F.2d 1310 (7th Cir.1992), which

was later vacated and a rehearing granted. *Hoffman Homes*, 975 F.2d 1554 (7th Cir.1992). However, on rehearing, as explained above, the court did not recede from its position that the Clean Water Act does *not* apply to isolated wetlands.

**5.** This disposition makes it unnecessary for the court to decide the issue of whether the Clean Water Act applies to "isolated" wetlands.

lated" wetlands was not "outside the range of competence demanded of attorneys in criminal cases." *United States v. Zweber,* 913 F.2d 705, 712 (9th Cir.1990) (quoting *Iaea v. Sunn,* 800 F.2d 861, 864 (9th Cir.1986), and citing *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)).

The government also plausibly argues that defense counsel's eliciting of the location of the site, *i.e.,* that it was adjacent to the Agana River, was part of his defense strategy. In fact, defense counsel had his own wetlands expert and "mitigation" report. Thus, it was the defense strategy to downplay the extent and seriousness of the violation and to show what efforts had been and would be made to correct it.

In this context it was not unreasonable for counsel not to contest that the site was covered wetlands, but rather, in effect, to concede the point because it was so easily provable and concentrate on his main defense. The ease and availability of this proof became apparent during the redirect examination of Frank Dayton, the government's chief witness. In fact, an aerial photo of the parcel in question and the adjacent river was readily available and introduced into evidence.

Given the strategy that defense counsel chose to follow, it was not ineffective assistance for him to have cross-examined the witness Dayton on the location of the subject parcel and its adjacency to the Agana River. "We have repeatedly refused to second-guess counsel's strategic decision to present or to forego a particular theory of defense when such decision was reasonable under the circumstances." *United States v. Layton,* 855 F.2d 1388, 1420 (9th Cir.1988, *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989). *See also United States v. Bosch,* 914 F.2d 1239, 1246 (9th Cir.1990).

Finally, even assuming *arguendo* that defense counsel's performance was deficient, no prejudice has been shown. There was evidence in the case, in the form of a jury view of the premises, that the wetlands in question were adjacent to the Agana River and, thus, were not "isolated" wetlands.

There has long been a debate in the case law as to whether a "view" constitutes independent evidence. The debate is well-summarized by the commentators and need not be repeated here. *See* 4 Wigmore on Evidence § 1168 (Chadbourn Rev.1972);[6] 2 McCormick, Evidence § 216 (4th ed. 1992). There is no binding, or even helpful, Circuit precedent. Most jurisdictions, however, recognize a jury view of the land in question as independent evidence, at least in eminent domain cases. *E.g., Union Elec. Power Co. v. Sauget,* 1 Ill.2d 125, 132, 115 N.E.2d 246, 250 (1953); *Taylor v. State Highway Comm'n,* 182 Kan. 397, 401, 320 P.2d 832, 835 (1958); *Thomson v. Kansas City,* 379 S.W.2d 194, 197 (Mo.C.A.1964); *Bentz v. Nebraska Pub. Power Dist.,* 211 Neb. 844, 849, 320 N.W.2d 763, 767 (1982); *O.K. Fairbanks Co. v. New Hampshire,* 108 N.H. 248, 251–52, 234 A.2d 108, 111 (1967); *Board of Comm'rs v. Gardner,* 57 N.M. 478, 489, 260 P.2d 682, 688–89 (1953); *State Road Comm'n v. Milam,* 146 W.Va. 368, 372–75, 120 S.E.2d 254, 256–58 (1961). As one California court has held:

Nor was there any error in instructing the jurors that what they saw and the knowledge they acquired as a result of their visit was independent evidence in the case and should be considered by them, together with all of the other evidence in the case in arriving at their verdict.

*City of Pleasant Hill v. First Baptist Church,* 1 Cal.App.3d 384, 414, 82 Cal.Rptr. 1 (1969).

This case, like an eminent domain case, involves an assessment of the nature and character of real property. Thus, logic dictates that the rule in eminent domain cases, that a jury view is independent evidence, should apply here. *See Gibson v. Cobb,* 236 Cal.App.2d 226, 234, 46 Cal.Rptr. 57 (1965) (view of premises in boundary dispute case was "independent" evidence). Here, the jury's view of the property was independent and sufficient evidence that the wetlands in question were adjacent to the Agana River and not "isolated" wetlands.

**6.** Wigmore refers to a jury view as "autoptic proference." *Id.*

This evidence was adduced as part of the government's case in chief.

Thus, even if counsel's performance was deficient, there was not any prejudice.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Layton,* 855 F.2d at 1414 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).[7] The court is satisfied that, given the jury's view, the small size of the island of Guam, and the undoubted familiarity of the jurors with the island's topography, there is no reasonable probability that without counsel's assumed error the verdict would have been different.

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion under 28 U.S.C. § 2255 to vacate and set aside his conviction and sentence is **DENIED.**

---

**7.** A more stringent test of prejudice may be set forth in *Lockhart v. Fretwell,* — U.S. —, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), in which the Court stated that the prejudice prong of *Strickland* "focusses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at —, 113 S.Ct. at 844. The court need not consider whether this is a stricter test than *Strickland* because the showing here does not meet the *Strickland* test.